THE CONNECTICUT LIGHT AND POWER COMPANY *v.*
WALTER W. WALSH, TAX COMMISSIONER

THE CONNECTICUT LIGHT AND POWER COMPANY ET AL.
*v.* WALTER W. WALSH, TAX COMMISSIONER

M. J. DALY & SONS, INC. *v.* WALTER W. WALSH,
TAX COMMISSIONER

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued November 14, 1947—decided January 15, 1948

Lawrence A. Howard, with whom were Atwood Collins II, and, on the brief, Charles L. Smiddy, for the plaintiffs The Connecticut Light and Power Company and M. J. Daly & Sons, Inc.

Arthur L. Corbin, Jr., and John Lashnits, with whom, on the brief, was Charles L. Smiddy, for the plaintiff The Southern New England Telephone Company.

Jack Rubin, assistant attorney general, with whom, on the brief, was William L. Hadden, attorney general, for the defendant.

MALTBIE, C. J. These cases present three questions arising under the statute adopted by the last General Assembly imposing a sales and use tax. Sup. 1947, Chap. 78a. In one, the Southern New England Telephone Company claims to be exempt from the imposition of the use tax; in another,

the Connecticut Light and Power Company, a water, gas, electric and power company, claims a like exemption; and in the third, the M. J. Daly & Sons corporation, which sells tangible personal property to gas, water, electric, telephone and telegraph companies, claims that such sales are exempt from the sales tax.

The provisions of the act directly involved in the controversies before us are as follows: "Sec. 330i. The sales tax. (1) Imposition and rate of sales tax. For the privilege of selling tangible personal property at retail a tax is hereby imposed upon all retailers at the rate of three per cent of the gross receipts of any retailer from the sale of all tangible personal property sold at retail in this state on or after July 1, 1947, and to and including June 30, 1951. (2) Reimbursement. Reimbursement for the tax hereby imposed shall be collected by the retailer from the consumer so far as it can be done and such tax reimbursement, termed 'tax' in this and the following subsections, shall be paid by the consumer to the retailer and it shall be the duty of each retailer in this state to collect from the consumer the full amount of the tax imposed by this chapter or an amount equal as nearly as possible or practicable to the average equivalent thereof; and such tax shall be a debt from the consumer to the retailer, when so added to the original purchase price and shall be recoverable at law in the same manner as other debts. . . . Sec. 333i. The use tax. (1) Imposition and rate of use tax. An excise tax is hereby imposed on the storage, use or other consumption in this state of tangible personal property purchased from any retailer on or after July 1, 1947, for storage, use or other consumption in this state at the rate of three per cent of the sales price of the property. (2) Lia-

bility for tax. Every person storing, using or otherwise consuming in this state tangible personal property purchased from a retailer is liable for the tax. His liability is not extinguished until the tax has been paid to this state except that a receipt from a retailer maintaining a place of business in this state or from a retailer who is authorized by the commissioner, under such rules and regulations as he may prescribe, to collect the tax and who is, for the purposes of this chapter relating to the use tax, regarded as a retailer maintaining a place of business in this state, given to the purchaser pursuant to subsection 3 of this section, is sufficient to relieve the purchaser from further liability for the tax to which the receipt refers. (3) Collection by retailer. Every retailer maintaining a place of business in this state and making sales of tangible personal property for storage, use or other consumption in this state, not exempted under this chapter, shall, at the time of making the sales or, if the storage, use or other consumption of the tangible personal property is not then taxable hereunder, at the time the storage, use or other consumption becomes taxable, collect the use tax from the purchaser and give to the purchaser a receipt therefor in the manner and form prescribed by the commissioner. . . . Sec. 334i. Exemptions. Taxes imposed by this chapter shall not apply to the gross receipts from the sale of and the storage, use or other consumption in this state with respect to the following items: . . . (c) Gas, water, electricity, telephone and telegraph services. The sales, furnishing or service of, gas, water, electricity, telephone and telegraph when delivered to consumers through mains, lines or pipes."

The telephone and power companies claim that the terms of the act themselves evince an intent that the

use tax shall not be imposed upon them as regards materials purchased and used or consumed by them in order to enable them to serve their customers; the telephone company also claims exemption by reason of a provision in § 1321 of the General Statutes that a tax upon gross earnings of telephone companies imposed by §§ 1316 and 1317 "shall be in lieu of all other taxation" in this state upon each such company and upon its tangible and intangible personal property, with an added provision that its real estate shall be taxed where it is located. The power company claims a like exemption under a provision in § 1325 of the General Statutes that a tax upon gross earnings imposed by §§ 1322 and 1323 upon companies manufacturing, selling and distributing water, gas or electricity "shall be in lieu of all license, corporate excess or income taxes" payable to the state and of all taxes on moneys and credits owned by the companies. The Daly corporation claims that, upon similar grounds, it is not bound to pay the state any tax upon materials sold to the other plaintiffs and similar companies for use or consumption in furnishing service to their customers.

The use tax is doubtless complementary to the sales tax, but its purpose goes beyond protecting sellers within the state from the unfair competition which would result if the purchase of articles outside state bounds was not subject to taxation, and beyond affording a means of preventing the evasion of the sales tax by such purchases. It applies, for example, as regards articles bought outside the state although they are not purchasable within it. By the use tax, a broader basis of taxation is established by the inclusion of purchases made without as well as within the state. *Dain Mfg. Co.* v. *Iowa State Tax Commission,* 237 Iowa 531, 534, 22 N. W. 2d 786.

The two taxes, though imposed by the same act, are distinct. "A sales tax and a use tax in many instances may bring about the same result. But they are different in conception, are assessments upon different transactions, and in the interlacings of the two legislative authorities within our federation may have to justify themselves on different constitutional grounds. A sales tax is a tax on the freedom of purchase—a freedom which wartime restrictions serve to emphasize. A use tax is a tax on the enjoyment of that which was purchased." *McLeod* v. *Dilworth Co.,* 322 U. S. 327, 330, 64 S. Ct. 1023, 88 L. Ed. 1304. Whether or not the two shall have precisely the same scope is for the determination of the legislature. In the act before us, it is unquestionably so that, in the main, articles subject to the use tax would, if bought in this state, be subject, instead, to the sales tax; but as to any particular type of article it may be necessary, as it is in these cases, to search the act to discover whether there is any particular intent as to it.

The terms of the act imposing the use tax are broad enough to include articles stored, used or consumed by the telephone and power companies on the same basis as those stored, used or consumed by others. The only provision of the act which singles out such companies for special treatment is § 334i (c), which we have quoted. While the introductory clause of that section refers to exemptions from both the sales tax and the use tax, all of the seventeen subsections deal specifically with exemptions from the former except two, which expressly state exemptions from both the sales tax and use tax as regards returnable containers and motor vehicle fuel. Subsection (c), instead of supporting the companies' claim to exemption from the use tax, pretty thor-

oughly disproves it. The exemption is of "the sales, furnishing, or service of, gas, water, electricity, telephone and telegraph," and it is, therefore, an exemption only from the sales tax. It does not, however, exempt such companies generally from that tax but only as regards service delivered to customers "through mains, lines or pipes." The careful delineation of the bounds of this exemption gives unusual force to the principle that the express mention in a statute of one exemption precludes reading others into it. *Hoard* v. *Sears, Roebuck & Co.*, 122 Conn. 185, 193, 188 A. 269. The provision unmistakably shows a legislative intent that, as to sales other than those specified, public utility companies should be subject to the sales tax, and shows that there was no intent to exempt them generally from that tax. Still less is there any basis in this provision for a claim of exemption of such companies from the use tax. Had the General Assembly intended such a result, it could easily have broadened the provision to exempt public utility companies from the imposition of the use tax. We cannot make such an exception where the words of the provision not only give no indication of a legislative intent to do so but rather show the contrary. *State* v. *Nelson*, 126 Conn. 412, 416, 11 A. 2d 856. It is not for us to search out some intent which we may believe the legislature actually had and give effect to it, but we are confined to the intention which is expressed in the words it has used. *Lee Bros. Furniture Co.* v. *Cram*, 63 Conn. 433, 438, 28 A. 540; *Finoia* v. *Winchester Repeating Arms Co.*, 130 Conn. 381, 385, 34 A. 2d 636.

It may be true that any tax upon the use of materials by the telephone and power companies to carry on their services will ultimately be reflected in an increase of the prices paid by consumers; but we can-

not upon any theory of the ultimate economic impact of the tax upon the customers of the companies so far expand the words of the statute as to embrace the exception from the use tax they claim. In *Alabama* v. *King & Boozer,* 314 U. S. 1, 62 S. Ct. 43, 86 L. Ed. 3, the court held that the purchase of materials for use by a contractor in building an army camp for the federal government on a "cost-plus" basis was not exempt because the burden would ultimately have to be borne by the government, saying (p. 12): "The contractors were thus purchasers of the lumber, within the meaning of the taxing statute, and as such were subject to the tax. They were not relieved of the liability to pay the tax either because the contractors, in a loose and general sense, were acting for the Government in purchasing the lumber or, as the Alabama Supreme Court seems to have thought, because the economic burden of the tax imposed upon the purchaser would be shifted to the Government by reason of its contract to reimburse the contractors." The theory that the burden of a tax upon business will ultimately fall upon the consumer is not restricted to public utility companies but is of general application; and that this theory was far from the minds of the General Assembly in adopting the act in question appears from the rather elaborate provisions it contains for passing on the burden of the sales tax directly to the purchasers. The companies cannot claim exemption from paying the use tax required by the terms of the act because the price to the consumer may ultimately have to be increased by reason of the tax. To find in the words "with respect to" at the beginning of § 334i, used in place of the word "of" occurring in the California statute (Cal. Rev. & Tax. Code [Deering, 1944] § 6353), upon which our law is concededly

based, an intent by the legislature so to broaden the scope of the exemption as to include a use tax upon the plaintiffs would be to place upon that particular phraseology a burden which it cannot reasonably sustain. We find nothing in the terms of the act which shows a legislative intent that the telephone and power companies shall not be subject to the use tax.

The effect of the provisions of §§ 1321 and 1325 that the taxes on gross earnings of the corporations described in the chapters of the General Statutes of which they form a part shall be in lieu of other taxation can best be approached by considering the legislative history of these provisions. Originally, in this state, all corporations including public utility companies were subject to the same tax upon their real and personal property as other property owners, and to no other taxes. The first change in that method of taxing the property of such companies was made in 1864 by the imposition of a tax upon railroad and horse railroad companies measured by the market value of their stock and their funded and floating debt, with a provision that the tax should "take the place and be in lieu of all other taxes on railroads and horse railroad property and franchises" within the state. Public Acts, 1864, Chap. 74, § 3. The next year, a tax was imposed upon the gross amounts received by telegraph companies in the state and upon the gross amounts of charges received by express companies within it; and as to each it was provided that the tax should be "in lieu of all other taxes upon the real and personal estate" of the companies used in their business. Public Acts, 1865, Chap. 116, §§ 3, 6. In 1882 the law as to telegraph companies was amplified to include telephone companies, and the provision last quoted was changed to read "in lieu of all other taxes upon [the

company's] estate" used in its business. Public Acts, 1882, Chap. 83. Thereafter, various changes were made in the statutes as to the taxation of these companies and in the phraseology of the provisions stating that the taxes should be "in lieu of" other taxes. In 1913, the situation was this: Railroad and railway companies continued to be taxed upon the value of their stocks and indebtedness, and the statute stated that the valuation made the basis of the tax "shall be the measure of value of such railroad, its rights, franchises and property in this state for purposes of taxation; and this sum shall be in lieu of all other taxes on its franchises, funded and floating debt, and railroad property in this state." General Statutes, Rev. 1902, §§ 2424, 2432. Express companies were taxed upon the gross amount of express charges received in the state, a tax stated to be "in lieu of all other taxes upon the estate" of the companies used in business. General Statutes, Rev. 1902, § 2433. Telegraph companies were required to pay twenty-five cents on each mile of wire used by them, and the tax was to be "in lieu of all other taxes upon its poles, wires, telegraphic instruments, and other personal property." Rev. 1902, § 2437. Telephone companies were taxed seventy cents upon each telephone transmitter furnished by them and twenty-five cents on each mile of wire they used, and the tax was to be "in lieu of all other taxes, except as herein provided, upon the poles, wires, telephonic and telegraphic instruments, and other personal property" of the corporations. Rev. 1902, § 2439.

Under an act of the General Assembly passed in 1911, a special commission was appointed to examine the matter of taxation of corporations in the state. The commission reported to the General Assembly of 1913. The report discussed at length the proper

method of taxing public utility companies in general, and, as to railroad, car, express, telephone and telegraph companies, it recommended that they be taxed upon their gross earnings; and it is significant to our present inquiry that, in considering the rate of taxation upon public utilities in general, the report stated as the basis of its discussion "that the object should be to impose a tax burden upon the corporations which shall be as nearly equivalent as possible to the burden of taxation borne by other wealth under the general property tax." Report on Taxation of Certain Corporations (1913), p. 8. The General Assembly in 1913 adopted an act changing the method of taxing express, telephone and telegraph companies to a tax upon gross earnings and adding a similar tax upon car companies, not previously taxed, substantially in accordance with the report of the commission. Public Acts, 1913, Chap. 188. In 1915, the General Assembly altered the method of taxing railroad and railway companies so that the tax was upon gross earnings, in substantial accord with the commission's report; and it also imposed a tax upon the gross earnings of water, gas, electric, and power companies. Public Acts, 1915, Chap. 292. Section 6 of the act of 1913, taxing express, telephone, telegraph and car companies, contained a provision that the tax should be "in lieu of all other taxation in this state upon each such company . . . and upon the tangible and intangible personal property" used by it in its business, but left its real estate subject to local taxation. Section 6 of the act of 1915 provided that the tax upon gross earnings of railroads and railways should be "in lieu of all other taxes . . . and of its rights, franchises, funded and floating debts, and property in this state," but its real estate, when not used exclusively for railroad purposes, was

to remain subject to local taxation; and § 16 of the act provided that the tax on gross earnings of water, gas, electric, and power companies should be "in lieu of all license, corporate excess, or income taxes payable to the state." In 1917, following our decision in *State* v. *United Electric Light & Water Co.*, 90 Conn. 452, 97 A. 857, the last provision was changed into its present form. Public Acts, 1917, Chap. 298, § 2.

The provisions in the earlier statutes evidently meant no more than that the taxes imposed in them should take the place of those ordinarily imposed on property owners and certain other specified taxes which, though not then imposed in this state upon such companies, were well known, as, in the case of railroads and horse railroads, franchise taxes. *Osborn* v. *New York & N. H. R. Co.*, 40 Conn. 491, 494, and *McHenry* v. *Alford,* 168 U. S. 651, 664, 18 S. Ct. 242, 42 L. Ed. 614, cited by the plaintiffs, do not militate against this conclusion, for in both the question was whether certain real estate of railroad companies was exempt from the usual property taxes. The only added intent suggested by later changes in the phraseology of the provisions was to make it clear, as in the case of telephone and telegraph companies, that the new basis of taxation was to be in lieu of that which had previously been imposed by the statutes specially applicable to them. In determining the meaning of the provisions we are considering, "justice requires, that we look at them as they were originally passed, and at the circumstances and manner in which they have assumed their present form. The history and progress of laws furnish a legitimate and most useful clew to their construction." *Quinebaug Bank* v. *Tarbox,* 20 Conn. 510, 518. We must interpret the act before us, "having in view the circumstances surrounding the legislature at the

time it was passed, and the history and progress of kindred legislation." *Pelton & King, Inc.* v. *Bethlehem,* 109 Conn. 547, 551, 147 A. 144.

The broad statement that the tax upon the gross earnings of telephone companies shall be "in lieu of all other taxation" upon them is not necessarily to be given a literal meaning. "In construing the act it is our duty to seek the real intent of the legislature, even though by so doing we may limit the literal meaning of the broad language used." *Greenwich Trust Co.* v. *Tyson,* 129 Conn. 211, 222, 27 A. 2d 166. It is not reasonable to assume that the General Assembly intended by the provisions we have quoted that the tax on gross earnings should take the place of taxes of a kind not then anywhere imposed and entirely outside its knowledge. When this provision is read in the light of its history and evident purpose, we are satisfied that it did not mean that telephone companies should not in the future be subjected to any other tax no matter what might be its nature. See *Western Electric Co.* v. *Revenue Dept.,* 312 Mich. 582, 592, 20 N. W. 2d 734; *New Haven Water Co.* v. *New Haven,* 106 Conn. 562, 579, 139 A. 99.

The use tax is not a tax on property but is described in the act as, and in fact is, in the nature of an excise tax upon the privilege of using, storing or consuming property. *Monamotor Oil Co.* v. *Johnson,* 292 U. S. 86, 93, 54 S. Ct. 575, 78 L. Ed. 1141; *Roth Drug, Inc.* v. *Johnson,* 13 Cal. App. 2d 720, 730, 57 P. 2d 1022, cited as authority in *Standard Oil Co.* v. *Johnson,* 10 Cal. 2d 758, 766, 76 P. 2d 1184; *Western Electric Co.* v. *Revenue Dept.,* supra, 597; *Morrow* v. *Henneford,* 182 Wash. 625, 627, 47 P. 2d 1016; *Chanute* v. *Commission of Revenue & Taxation,* 156 Kan. 538, 543, 134 P. 2d 672; *Wiseman* v. *Phillips,* 191 Ark. 63, 71, 84 S. W. 2d 91; *State ex rel. Cement*

Co. v. Smith, 338 Mo. 409, 413, 90 S. W. 2d 405; County Board of Education v. State, 237 Ala. 434, 437, 187 So. 414. "The privilege of use is only one attribute, among many, of the bundle of privileges that make up property or ownership." Cardozo, J., in Henneford v. Silas Mason Co., 300 U. S. 577, 582, 57 S. Ct. 524, 81 L. Ed. 814; see also Bromley v. McCaughn, 280 U. S. 124, 136, 50 S. Ct. 46, 74 L. Ed. 226. Sales and use taxes, if any existed in 1913 and 1915, were certainly not generally known, and it cannot be assumed that the legislature, in providing that the gross earnings taxes imposed in those years should be in lieu of all taxation of that nature which might at some future day be imposed by it, meant to include them. The use tax is in its nature entirely foreign to those which it can be assumed the General Assembly had in mind when the act of 1913 was adopted. It is true that the General Assembly of 1947, in imposing a tax upon telephone companies based on classified advertising, inserted a provision that the tax should be paid notwithstanding any provision of § 1321; Sup. 1947, § 295i; but in view of the apparent lack of understanding of and the diverse claims as to the effect of § 1321, illustrated in the case before us, we attach no significance to that provision; to regard it as evincing a construction placed upon the section by the legislature would be to attribute to the members of that body "a subtlety of discrimination which they would probably disclaim." Cortes v. Baltimore Insular Line, 287 U. S. 367, 375, 53 S. Ct. 173, 175, 77 L. Ed. 368, quoted in Jewett City Savings Bank v. Board of Equalization, 116 Conn. 172, 183, 164 A. 643. The telephone company is not entitled to exemption from the use tax because of the clause we have quoted from § 1321.

The provision in § 1325 upon which the power company relies is much more limited in its scope than that in § 1321 and definitely specifies certain taxes in lieu of which the tax on gross earnings is imposed. It states that the latter shall be "in lieu of all license, corporate excess or income taxes payable to the state, and of all taxes which otherwise would be laid on moneys and credits, including accounts and bills receivable." The only words which could possibly serve to exempt the power company from the use tax are "license . . . taxes." The Sales and Use Tax Act does require that any person who shall "engage in or transact business as a seller" shall secure a permit; § 331i(1); but this requirement has no application to the use tax. Nor does the fact that the use tax is upon the privilege of storing, using or consuming tangible personal property contain any implication of a legislative intent that anyone subject to the tax is deemed to be acting under a license. The meaning of the words "license tax" is well illustrated by an act passed by the General Assembly in 1915, the same year as was the statute containing the provision we are considering; Public Acts, 1915, Chap. 314; the act required persons displaying advertising matter to take out a license from the secretary of the state and pay a fee of one cent for each square foot. In *State* v. *Murphy,* 90 Conn. 662, 98 A. 343, we pointed out (p. 665) that a license might be required either for regulating pursuits under the police power or for the purpose of the imposition of a tax; and we held that the act fell within the latter category. A license when issued for such a purpose is a certificate required in connection with the pursuit of a business or occupation or the doing of an act which is made the object of a tax; it is the means of collecting a tax upon a privilege and is

distinct from the tax itself. *Blauner's Inc.* v. *Phila-delphia,* 330 Pa. 342, 347, 198 A. 889; *Kresge Co.* v. *Bluefield,* 117 W. Va. 17, 19, 183 S. E. 601; *O'Neil* v. *United Producers & Consumers Co-operative,* 57 Ariz. 295, 301, 113 P. 2d 645; *C. F. Smith Co.* v. *Fitzgerald,* 270 Mich. 659, 686, 259 N. W. 352; Ot-tumwa v. Zekind, 95 Iowa 622, 626, 64 N. W. 646; *Mouledoux* v. *Maestri,* 197 La. 525, 544, 2 So. 2d 11; see note *McGoldrick* v. *Berwind-White Co.,* 309 U. S. 33, 45, 60 S. Ct 388, 84 L. Ed. 565. The General Assembly, except perhaps for practical difficulties, might have employed the device of a license to collect the use tax, but it did not do so. The use tax it imposed is not a "license . . . tax" within the meaning of § 1325.

Much of the argument before us has proceeded upon the basis that the issue is whether the use tax constituted a repeal in whole or in part of the provisions in §§ 1321 and 1325; but there is no need to consider that question because of our conclusion that those provisions were not intended to include such a tax as the one before us. Our General Assembly is under no constitutional prohibition against double taxation, and, while it is to be avoided where the intent of the legislature is ambiguous, we cannot hold a statute invalid on that ground. *State* v. *Murphy,* supra, 666; *House of Hasselbach, Inc.* v. *McLaughlin,* 127 Conn. 507, 510, 18 A. 2d 367. The intent of the act before us was to impose additional taxes, and even if the use tax 'and the tax on gross earnings somewhat overlap, as the telephone and power companies claim, this does not invalidate the conclusion to which we have come. Indeed, these companies have less reason to make that claim than do persons who are required to pay the sales and use taxes on account of property which they are com-

pelled to put into their lists for taxation under the general law. Both the telephone company and the power company are subject to the use tax.

The claim of the Daly corporation requires little discussion. There is nothing in the act which exempts sales to public utility companies from the Sales Tax Act; nor, as we have shown, are they exempt from the use tax; and we cannot read into the law an exemption where its terms afford no basis for doing so and where its application would not bring about absurd or unreasonable results. *Tileston* v. *Ullman*, 129 Conn. 84, 92, 26 A. 2d 582; *State ex rel. Kirby* v. *Board of Fire Commissioners*, 129 Conn. 419, 424, 29 A. 2d 452; *State ex rel. Heimov* v. *Thomson*, 131 Conn. 8, 12, 37 A. 2d 689.

In Connecticut Light & Power Co. v. Walsh, Tax Commissioner (No. 2966), to the question asking whether the use tax applies as regards tangible personal property purchased by the plaintiff, we answer "Yes," and, to the question asking whether the provisions of § 1325 of the General Statutes prevent the imposition of the tax, we answer "No."

Costs will be taxed as though the defendant had prevailed upon an appeal.

In Connecticut Light & Power Company et al. v. Walsh, Tax Commissioner (No. 2967), to the question asking whether the use tax applies as regards tangible personal property purchased by the plaintiff, The Southern New England Telephone Company, we answer "Yes," and, to the question asking whether the provisions of § 1321 of the General Statutes prevent the imposition of the tax, we answer "No."

Costs will be taxed as though the defendant had prevailed upon an appeal.

In M. J. Daly & Sons, Inc. v. Walsh, Tax Commis-

312

sioner (No. 2965), to the first question asking whether the sales tax applies with respect to sales at retail by the plaintiff of tangible personal property to gas, water, electricity, telegraph and telephone companies for use in connection with services rendered by them we answer "Yes." The second question propounded has not been so developed in argument before us that any answer beyond that given to the first question seems necessary.

Costs will be taxed as though the defendant had prevailed upon an appeal.

In this opinion BROWN, ELLS and DICKENSON, Js., concurred.

JENNINGS, J. (dissenting in part). I agree in the main with this opinion, but think that the exemption granted the telephone company by § 1321 is broad enough to free it from the obligation of paying the use tax, which is a tax on the purchaser.