# International Business Machines Corporation v. Vermont Department of Taxes

[336 A.2d 158]

No. 66-74

**Present: Barney, C.J., Smith, Keyser and Daley, JJ., and Shangraw, C.J. (Ret.) Assigned**

Opinion Filed April 1, 1975

*Gravel, Shea & Wright*, Burlington, for Plaintiff.

*M. Jerome Diamond,* Attorney General, and *Georgiana O. Miranda,* Assistant Attorney General, Montpelier, for Defendant.

**Keyser, J.** This appeal presents for our determination several questions concerning the application of the Vermont Sales and Use Tax, Chapter 233 of Title 32 of the Vermont Statutes Annotated. The central provision throughout is 32 V.S.A. § 9773(2), which reads as follows:

> Unless property has already been or will be subject to the sales tax under this chapter, there is hereby imposed on every person a use tax at the rate of 3 per cent for the use within this state on and after June 1, 1969, except as otherwise exempted under this chapter:
>
> (2) Of any tangible personal property manufactured, processed or assembled by the user, if items of the same kind of tangible personal property are offered for sale by him in the regular course of business, but the mere storage, keeping, retention or withdrawal from storage of tangible personal property or the use for demonstrational or instructional purposes of tangible personal property by the person who manufactured, processed or assembled such property shall not be deemed a taxable use by him.

Appellant International Business Machines Corporation, a corporation doing business in the State of Vermont, manufactured certain tangible personal property outside of the State and subsequently brought the property into Vermont to be used here for the first time after June 1, 1969. Since this property was of the kind offered for sale by IBM in the regular course of its business, a use tax was imposed pursuant to the above-cited provision. The tax was computed under 32 V.S.A. § 9774(d) at the rate of "three per cent of the price at which items of the same kind of tangible personal property are offered for sale by the user." Having unsuccessfully challenged the assessment before the Vermont Commissioner of Taxes and the Washington Superior Court, IBM now seeks relief here. Several arguments have been advanced in support of its position; we shall treat each separately.

## I.

Although all of the property under consideration was first brought into Vermont and used here after June 1, 1969, some of this property was manufactured before that date and some after. With respect to the equipment manufactured outside of Vermont before June 1, 1969, it is IBM's position that no use tax is due. This argument is premised first upon the theory that the sales and use tax provisions are complementary in nature and that, since no sales tax could be imposed under 32 V.S.A. § 9771 for sales occurring prior to June 1, 1969, it is inconsistent with the legislative purpose to impose a use tax on equipment manufactured before that date. Emphasizing the language of 32 V.S.A. § 9773 that no use tax is due where "property has been or will be subject to the sales tax", IBM maintains that the prospective features of the sales tax, as delineated in the transitory provisions of 32 V.S.A. § 9771, should apply to the imposition of the use tax as well.

Such a theory presumes an identity between the sales and use tax which we are not constrained to recognize. While sales and use taxes often produce a complementary effect, the United States Supreme Court has clearly articulated the conceptual distinction between the two:

> A sales tax and a use tax in many instances may bring about the same result. But they are different in conception. . . . A sales tax is a tax upon the freedom of purchase. . . . A use tax is a tax on the enjoyment of that which was purchased. *McLeod* v. *J. E. Dilworth Co.,* 322 U.S. 327, 330 (1944).

Mr. Justice Douglas, dissenting on other grounds, stated the proposition in more practical terms: "A use tax may of course have a wider range of application than a sales tax." *Id.* at 333. *See also Union Oil Co. of California* v. *State Board of Equalization,* 34 Cal. Rptr. 872, 386 P.2d 496 (1963) ; *Connecticut Light and Power Co.* v. *Walsh,* 134 Conn. 295, 57 A.2d 128 (1948).

We thus agree with the Supreme Court of Connecticut that whether or not the sales and use tax shall have precisely the same scope and application is for the determination of the

Legislature. *Connecticut Light and Power Co.* v. *Walsh, supra,* 57 A.2d at 131. And on this issue our statutes are clear. A sales tax is imposed where the Vermont *sale* has occurred on or after June 1, 1969, and a use tax is imposed where the first *use* of property in Vermont has occurred on or after the same date. In view of the aforementioned conceptual distinction between the two taxes, we find no inconsistency in the imposition of a tax on the use of property manufactured before June 1, 1969, even though the sale of the same piece of property in Vermont before that date would not have resulted in a sales tax assessment.

But IBM argues alternatively that such a statutory scheme results in a discrimination against out-of-state manufacturers in violation of the interstate commerce clause. With this, we simply do not agree. Such an impermissible discrimination could only be found if the out-of-state manufacturer were put in a different position than the in-state manufacturer. *Halliburton Oil Well Cementing Co.* v. *Reily,* 373 U.S. 64 (1963). But under the applicable statutory provisions, the two are placed on an equal footing. Both are liable for a use tax if they manufacture equipment before June 1, 1969, but do not use it in Vermont until on or after that date.

The key to taxability is temporal, not geographical—what counts is the time that the property is first used in Vermont. Under 32 V.S.A. § 9773(2), property of the type under consideration here is not deemed "used" by its mere "storage, keeping, retention or withdrawal from storage"; thus the in-state manufacturer who manufactures before June 1, 1969, but holds the property in storage until that date or after will be subject to a tax for subsequent use in precisely the same manner as IBM, the out-of-state manufacturer, has been assessed here. Similarly, the in-state and out-of-state manufacturers both escape use tax liability if the property is actually put to use here before June 1, 1969. 32 V.S.A. § 9744(a)(1).

No violation of the interstate commerce clause has been demonstrated. Property manufactured by IBM before June 1, 1969, and first used in this State on or after that date, if of the kind offered for sale by IBM in the regular course of its business, is properly subject to the Vermont use tax.

## II.

■ IBM argues that its liability for a use tax under 32 V.S.A. § 9773 (2) results in a violation of the interstate commerce clause for another entirely different reason. It maintains that the use tax imposed on property manufactured out of state and brought into Vermont for use on or after June 1, 1969, is higher than the tax which an in-state manufacturer must pay. If this were the case, a serious constitutional question would indeed be raised, for "equal treatment for in-state and out-of-state taxpayers similarly situated is the condition precedent for a valid use tax on goods imported from out-of-state." *Halliburton Oil Well Cementing Co.* v. *Reily, supra,* 373 U.S. at 70. *See also Gray* v. *Oklahoma Tax Commission,* 379 P.2d 843 (Okla. 1963). But the application of this principle begs the preliminary question of whether the Vermont statutory scheme does, in fact, permit such an inequality.

■ Taxpayer's affirmative response to this inquiry is premised upon the language of 32 V.S.A. § 9773 which provides that no use tax is due where "the property has been or will be subject to the sales tax under this chapter." Since the in-state manufacturer will have already paid a three per cent sales tax on the component parts under 32 V.S.A. § 9771, it is argued that no use tax can be imposed upon the finished product. The end result is that the in-state manufacturer is taxed only on the component parts used, while the out-of-state manufacturer, who has paid no sales tax on component parts, is taxed under 32 V.S.A. § 9774(d) on the retail selling price of the product which includes not only the cost of the component parts, but also labor and overhead.

This interpretation of the statute is based upon a factual situation in which the in-state manufacturer has purchased all of his parts within the State after June 1, 1969, for any parts purchased before that date or purchased out of state would not be subject to the sales tax which taxpayer sees as a basis for use tax exemption. This observation raises serious questions as to how the statute, as construed by IBM, would apply in different factual settings. Without digressing into protracted analyses of various hypothetical situations, we think that it is sufficient to note that under a logical extension of

taxpayer's interpretation of the statute an out-of-state manufacturer could buy a single component part in Vermont, such as an electric plug, pay a sales tax on it, and thereby avoid a subsequent use tax here on a million dollar piece of equipment of which that plug is a "component part".

A statute is to be construed so as to carry out the intent of the Legislature, and we must presume that no unjust or unreasonable result was intended. *In re Preseault*, 130 Vt. 343, 348, 292 A.2d 832 (1972). Taxpayer's theory of construction fails under either test. The fundamental difficulty with the IBM interpretation is that it refuses to recognize a manufactured piece of equipment as a distinct piece of property with an identity separate from its component parts. When a use tax is assessed upon a computer, it is the computer as a distinct entity, and not component parts that have lost their identity, which is the "property" subject to taxation.

We thus conclude that the use tax imposed under 32 V.S.A. § 9773(2) is computed on the basis of the price at which items of the same kind are offered for sale by the user. This is so whether the property was manufactured in this State or another. To the extent that a manufacturer has in fact paid a sales tax upon a component part, it follows that this tax must be credited against the use tax due on the manufactured property. This conclusion is consistent with the language and purpose of the statute and eliminates the possibility of a discriminatory double taxation on the component part. As a practical matter, however, it should seldom be necessary to invoke the credit procedure, for 32 V.S.A. § 9745 states that:

> [T]he commissioner may, in his discretion, authorize a purchaser, who acquires personal property or services under circumstances which make it impossible at the time of acquisition to determine the manner in which the tangible personal property or services will be used, to pay the tax directly to the commissioner and waive the collection of the tax by the vendor.

Since the in-state manufacture for *sale* is already granted a sales tax exemption for component parts under 32 V.S.A. § 9741(14), this "wait and see" provision will enable the manufacturer who assembles both for sale and use to withhold

payment of taxes until his liability is finally determined. If the particular item of property is put on the market for sale, no tax is due from the manufacturer, and the tax on the retail selling price is ultimately borne by the purchaser on the open market. If the item is retained and used by the manufacturer, a use tax is due based upon the price at which an identical piece of property is sold at retail. Technically speaking, the sales tax on the component parts is assessed and credited at this time, but an itemized breakdown and accounting is unnecessary in view of the fact that the sales and use tax are both imposed at the same three per cent rate.

## III.

32 V.S.A. § 9774(b)(1) provides that an out-of-state purchaser of property who can affirmatively show that he has used the property for more than six months prior to its use in this State is entitled to a use tax basis figured upon the current market value of the property at the time of its first use within the State "not to exceed its cost". IBM maintains that, to the extent it is liable for a use tax at all, it is entitled to this lower basis on so much of the property under consideration here as was used out-of-state for more than six months prior to its use here. This argument was advanced unsuccessfully below, the Commissioner and the lower court both concluding that IBM was not a "purchaser" under 32 V.S.A. § 9774(b)(1), but rather a "manufacturer" whose use tax base must be figured on the retail selling price of the product pursuant to the specific language of 32 V.S.A. § 9774(d). To this conclusion taxpayer has excepted.

This issue presents some difficulty because of the manner in which the statute was drafted. While it would appear that § 9774(d) specifically defines the tax basis for property such as that under consideration here as the retail selling price, it is equally clear that IBM cannot be denied the lower basis it claims under § 9774(b)(1) unless it is not a "purchaser".

IBM claims that it is a "purchaser" as well as a "manufacturer" and cites 32 V.S.A. § 9701(13) in support of its position. The point is well taken, for that definitional subsection describes "use" as "the exercise of any right or power over tangible personal property *by the purchaser thereof*."

(Emphasis added.) Since it is patent that a use tax can only be imposed on a user, and a user is by the above statutory definition a purchaser, it is difficult to comprehend how IBM can be denied the status of purchaser under § 9774(b) (1), for we find no authority in the statute to indicate that the term assumes different meanings for different statutory provisions. Although we are cognizant that according IBM the status of purchaser under § 9774(b) (1) seemingly results in a conflict with the specific language of § 9774(d), the problem lies in the manner in which the provisions were drafted and resolution of the conflict calls for the application of our well-settled rule that doubts are to be resolved against the taxing power and in favor of the taxpayer. *Union Twist Drill Co.* v. *Harvey*, 113 Vt. 493, 37 A.2d 389 (1944) ; *First National Bank* v. *Commissioner of Taxes*, 111 Vt. 281, 16 A.2d 184 (1940). We hold that IBM is entitled, where applicable, to be taxed on the fair market value of the property, not to exceed cost. We entertain no doubt, however, that the term "cost" as used in § 9774(b) (1) refers to the retail selling price of the property and not, as IBM contends, to the manufacturer's cost. IBM's construction would be totally inappropriate in its application to the open-market purchaser.

A challenge has also been made to the assessment of penalty and interest by the Commissioner. In view of the fact that the cause must be remanded and the tax recomputed, where applicable, under § 9774(b) (1), any treatment by this Court of the penalty and interest issue at this time would be premature.

The Department of Taxes, in the final argument of its brief, has raised a question as to our jurisdiction. Citing *In re Appeal of Rhodes*, 131 Vt. 308, 305 A.2d 591 (1973), it maintains that as in that case we are without statutory authority here to entertain this appeal. But the *Rhodes* decision involved an attempted appeal from a superior court decision in a zoning matter despite the language of then applicable statute, 24 V.S.A. § 4472(a), which stated:

> The exclusive remedy of an interested person *with respect to any decision or act taken,* or any failure to act, under this chapter or with respect to any one or more of

the provisions of any plan or by-law shall be the appeal to the board of adjustment under section 4464 of this title, and the appeal to a county court from an adverse decision upon such appeal under section 4471 of this title. (Emphasis added.)

In contrast, 32 V.S.A. § 9817(b), the applicable provision here, provides that an appeal to the superior court "shall be the exclusive remedy available to any taxpayer for review of *a decision of the commissioner* determining the liability of the taxpayer for the taxes imposed." (Emphasis added.)

 The distinction between the two statutes is subtle, but important. The zoning appeal statute upon which *Rhodes* turned made appeal to the superior court the exclusive appellate remedy with respect to *any* decision or act taken. The tax appeal statute, on the other hand, makes appeal to superior court the exclusive avenue only with respect to the Commissioner's decision. It thus clearly precludes the taking of a direct appeal from the Commissioner to this Court, but we find no language barring our review of a subsequent decision of the superior court. Bearing in mind the necessity of uniformity under our State's tax laws, and finding no statutory impediment to our jurisdiction here, we refuse to abdicate the basic appellate authority over lower court decisions conferred upon us by 4 V.S.A. § 2.

*The judgment is reversed and the cause is remanded to the superior court with instructions to draft a judgment order in accordance with the views expressed in this opinion and to certify the cause to the Commissioner of Taxes for reassessment of use tax liability.*