## Morton Buildings, Inc. v. Department of Taxes

[705 A.2d 1384]

No. 97-002

Present: **Dooley, Morse, Johnson and Skoglund, JJ., and Gibson, J. (Ret.),
Specially Assigned**

Opinion Filed December 26, 1997

Motion for Reargument Denied January 15, 1998

*Paul P. Hanlon*, Montpelier, and *Abraham M. Stanger* and *Lisa Barse Bernstein* of *Seyfarth, Shaw, Fairweather & Geraldson*, New York, New York, for Plaintiff-Appellee.

*J. Wallace Malley, Jr.*, Acting Attorney General, and *Danforth Cardozo, III*, Special Assistant Attorney General, Montpelier, for Defendant-Appellant.

**Dooley, J.** The Vermont Department of Taxes appeals a Washington Superior Court order granting a use tax refund to Morton Buildings, Inc. The issue is whether Morton must pay a use tax on raw materials it purchased outside of Vermont, assembled into building components at its Gettysburg, Pennsylvania factory, and then brought into Vermont to construct prefabricated buildings. We hold that Morton must pay the use tax on the materials pursuant to 32 V.S.A. § 9773(1), and reverse the superior court decision.

Morton originally sought a refund of use taxes paid between July 1987 and February 1990. The department denied the refund, and the Commissioner of Taxes affirmed, ruling that the building components were essentially the same as the raw materials Morton had purchased at retail. Because Morton had not paid sales tax on these materials, the Commissioner ruled that it must pay a use tax pursuant to 32 V.S.A. § 9773(1). On appeal, the superior court disagreed, concluding that the fabricated components Morton brought into Vermont were not the same as the items of tangible personal property Morton had

bought at retail and, as a result, they were not taxable.[1] The department appealed to this Court.

The parties have stipulated to the facts. Morton is an Illinois corporation, with its principal place of business in Illinois and a Vermont sales office in Rutland. It is engaged in the production, sale and onsite erection of prefabricated timber-frame, metal-sheathed warehouses and other buildings for use by farm and industry. The overall style of the buildings is uniform, but the customer specifies the dimensions of the building and the location of doors, windows and skylights.

Morton purchases raw materials used in its business in bulk from vendors outside Vermont and stores them in its own warehouses outside Vermont. The principal materials are steel and lumber. Morton pays no sales tax to any state on its purchase of the raw materials.

Morton makes building components destined for Vermont customers in its factory in Gettysburg, Pennsylvania. When an order is received, Morton withdraws the necessary raw materials from storage and makes them into various building components in accordance with the customer's specifications for the building. The building components include trusses, lower columns, upper columns, purlins, metal panels and overhead rafters. Making these building components involves sawing the lumber to different lengths and angles, drilling holes as needed, and assembling the cut lumber using metal gussets, connector plates or nails. Morton also makes metal panels (from galvanized cold-rolled steel), which it uses to construct the building's interior and exterior walls and roof panels.

Morton delivers the completed building components, along with windows, doors and other items purchased by Morton in their final form, to the customer's site. The erection and installation of the building on site is a "turnkey" project, taking about four to five days. Morton's employees supply all the labor for transportation, loading, unloading, and erection of the building. The erection and installation of a Morton building represents a permanent improvement to real property in Vermont for sales-and-use-tax purposes.

---

[1] The department also argued that the materials were taxable under § 9773(3) as tangible personal property "not acquired for purposes of resale, upon which any taxable services . . . have been performed." The Commissioner agreed, but the superior court ruled that no taxable services had been performed on the building components. In view of our disposition, we do not reach this alternative ground for deciding that the materials are subject to a use tax.

█ █ In reviewing this case, we must afford deference to the Commissioner's determination, and his findings should not be set aside unless clearly erroneous. *Bigelow v. Department of Taxes*, 163 Vt. 33, 35, 652 A.2d 985, 986 (1994). In addition, "absent compelling indication of error, the interpretation of a statute by the administrative body responsible for its execution will be sustained on appeal." *Burlington Elec. Dep't v. Department of Taxes*, 154 Vt. 332, 337, 576 A.2d 450, 453 (1990) (quoting *In re R.S. Audley, Inc.*, 151 Vt. 513, 517, 562 A.2d 1046, 1049 (1989)). Nonetheless, we recognize that when construing a statute imposing a tax, we resolve any ambiguities in favor of the taxpayer. See *International Bus. Machs. v. Department of Taxes*, 133 Vt. 269, 277, 336 A.2d 158, 163 (1975).

In approaching the issues in this case, it is first helpful to consider the purpose of the use tax scheme, because we must construe the statute to carry out the intent of the Legislature. *Id.* at 275, 336 A.2d at 162. Complementary use taxes were enacted to discourage consumers from shopping in states with low or no sales taxes. See W. Warren & M. Schlesinger, *Sales and Use Taxes: Interstate Commerce Pays Its Way*, 38 Colum. L. Rev. 49, 63-65 (1938). The goal of use taxes is to place in-state and out-of-state sellers on the same footing. See *Chicago Bridge & Iron Co. v. Johnson*, 119 P.2d 945, 947 (Cal. 1941). As we stated in *Rowe-Genereux, Inc. v. Department of Taxes*, 138 Vt. 130, 133-34, 411 A.2d 1345, 1347 (1980):

> A use tax is a necessary complement to a state's sales tax, and is used as a revenue-raising device in almost all fifty states. . . . It is designed to protect a state's revenues by taking away the advantages to residents of travelling out of state to make untaxed purchases, and to protect local merchants from out-of-state competition which, because of its lower or nonexistent tax burdens, can offer lower prices.

(Citation omitted). This dispute revolves around the application of one specific provision of the use tax statute. The statute imposes a five percent use tax on "any tangible personal property purchased at retail" unless the property "has already been or will be subject to the sales tax under this chapter."[2] 32 V.S.A. § 9773(1). Thus, in order for the department to impose a use tax on the materials Morton incorporates into its building components and thereafter into its

---

[2] Property on which a sales tax was paid in another state is exempt from use taxation if the other sate allows a corresponding exemption. See 32 V.S.A. § 9744(a)(3).

buildings, it must show that (1) Morton purchased tangible personal property at retail, and (2) Morton used the same tangible personal property in Vermont.

Morton contends that the department cannot make the two-part showing because the tangible personal property it used to construct buildings in Vermont is not the same tangible personal property that it purchased at retail. Morton argues that through its manufacturing processes, the raw materials it purchased at retail were transformed into different items of tangible personal property – i.e., building components. Thus, the building components it used in Vermont were not, it argues, purchased at retail.

Morton emphasizes that we drew this exact distinction in *International Business Machines v. Department of Taxes*, where a manufacturer argued that the use tax discriminates against out-of-state products because an in-state manufacturer can avoid a use tax by paying a sales tax on the component parts whereas a manufacturer from a state with no sales tax pays a use tax on the full value of the manufactured product when it is brought into Vermont. We responded:

> The fundamental difficulty with the IBM interpretation is that it refuses to recognize a manufactured piece of equipment as a distinct piece of property with an identity separate from its component parts. When a use tax is assessed upon a computer, it is the computer as a distinct entity, and not component parts that have lost their identity, which is the "property" subject to taxation.

133 Vt. at 275, 336 A.2d at 162. Here, Morton asks that we apply this distinction to recognize its trusses, purlins, columns, etc. as manufactured items separate from the raw materials that went into them.

A number of appellate courts have accepted Morton's argument in construing use tax provisions similar to ours. The earliest case accepted the structure of Morton's argument without closely examining whether Morton had sufficiently changed the raw materials so that they had lost their identity. See *Morton Bldgs., Inc. v. Chu*, 510 N.Y.S.2d 320, 321-22 (App. Div.), *aff'd*, 513 N.E.2d 1304 (N.Y. 1987). The more recent cases have accepted Morton's position that it has transformed the raw materials so they no longer exist. In *Morton Buildings, Inc. v. Bannon*, 607 A.2d 424 (Conn. 1992), the Connecticut Supreme Court found that Morton's processing of the materials "involves an integrated series of operations using the taxpayer's

production machinery that not only cuts the raw materials to size but changes their shape and affixes metal plates and other hardware" and concluded that its "building components are not identical with the raw materials that go into their production." *Id.* at 427-28; see also *Morton Bldgs., Inc. v. Commissioner of Revenue*, 683 N.E.2d 720, 723 (Mass. App. Ct. 1997) (because one could not "disassemble a truss and have recognizable lumber, steel, and nails to be used or consumed," Morton "so significantly altered the raw materials that those raw materials do not come within the reach [of the use tax statute] as written"); *Sharp v. Morton Bldgs., Inc.*, 953 S.W.2d 300, 303 (Tex. Ct. App. 1997) ("trusses and other components are something more than pieces of steel and lumber" and are "distinct from their constituent raw materials").

The department does not appear to disagree with the general proposition that manufactured items can be different for tax purposes from the raw materials that went into them. It emphasizes, however, that Morton sells buildings, not building components, and the building components are themselves raw materials. Thus, it argues that the partial assembly of the original raw materials does not transform these materials into something else. In support of this position, it notes that Morton's activities do not meet the definition of "manufacturing" contained in the department's regulations. It cites cases that have rejected Morton's position, see *Morton Bldgs., Inc. v. Commissioner of Revenue*, 488 N.W.2d 254, 259 (Minn. 1992), as well as cases involving taxpayers in similar situations where the court found that a use tax could be levied, see *Chicago Bridge & Iron Co. v. Johnson*, 119 P.2d at 948; *Western Contracting Corp. v. State Bd. of Equalization*, 71 Cal. Rptr. 472, 473-76 (Ct. App. 1968); *Exxon Corp. v. State Bd. of Equalization*, 783 P.2d 685, 688-89 (Wyo. 1989).

For three reasons, we conclude that the department has the better argument on the facts before us. First, we believe that the statutory language taken as a whole supports the department's position. Although the cases on which Morton relies are instructive, we have stressed in the past that cases from other states are of little assistance because each statutory scheme is unique. See *Rock of Ages Corp. v. Commissioner of Taxes*, 134 Vt. 356, 358, 360 A.2d 63, 65 (1975). Moreover, we must read the tax statutes together in pari materia to implement the intent of the Legislature. See *In re Cottrell*, 158 Vt. 500, 504, 614 A.2d 381, 383 (1992). The use tax statute on which Morton relies does not specifically state that raw materials that are used in manufacturing lose their separate identity as personal

property purchased at retail subject to a use tax. Indeed, the statutory definitions of "use" and "tangible personal property" are quite broad and cover the raw materials that Morton brings into Vermont. See 32 V.S.A. § 9701(13) ("use" means "the exercise of any right or power over tangible personal property"); *id.* § 9701(7) (tangible personal property is "personal property which may be seen, weighed, measured, felt, touched or in any other manner perceived by the senses"). Certainly, one can see the lumber and fasteners from which Morton constructs its building components, and Morton uses them in Vermont in constructing its building.

It is significant that the statutory scheme contains a use tax exemption that covers situations similar to that before us. 32 V.S.A. § 9741(14) exempts from the sales and use tax tangible personal property "which becomes an ingredient or component part of, or is consumed or destroyed or loses its identity in the manufacture of tangible personal property for sale." Neither party has claimed that this exemption statute applies to this case, apparently because what Morton ultimately sells is real property. What Morton seeks is a virtually identical exemption for ingredients or component parts of real property through a statutory construction of the general provisions setting forth what constitutes a taxable use.

We conclude that the Legislature specifically dealt with the situation of ingredients and components used in manufacturing by providing a limited exemption from use taxation in § 9741(14). That exemption would be unnecessary if the general statute on imposition of the use tax did not extend to ingredients and component parts of manufactured products. Reading the statutory sections together, we conclude that the Legislature did not intend that ingredients or component parts escape use taxation except in the circumstances set forth in § 9741(14).

Second, even if we held that § 9773(1) did not extend to raw materials used in creating manufactured products, we would not hold that Morton's raw materials would escape use taxation. The "manufacturing" that Morton claims here is quite rudimentary. By regulation, the department defines "manufacturing" as:

> performance as a business of an integrated series of operations which places personal property in a form, composition, or character different from that in which it was acquired whether for sale or use by the manufacturer. The change in form, composition or character must result in a

different product having a distinctive name, character and use.

Vermont Department of Tax Regulations, § 1.9741(14)-2(a), 1 Code of Vt. Rules 10060022 (1995). Even if the purlins, trusses and columns have a "form, composition or character" different from the wood and metal components from which they are made, it is difficult to discern how they are a "different product" with a "distinctive . . . character and use."

Morton plunges us down a slippery slope of line drawing. Most of what Morton has done is to cut pieces of wood and fasten them together, albeit with great precision. The wood and metal ·are immediately identifiable in the new building component. We think we must find more change of character and use to invoke an exception to the statutory coverage.

 Finally, we find compelling the department's contention that to not impose a use tax on Morton would be inherently unfair to similarly situated taxpayers. For example, a Vermont contractor purchasing building supplies in Vermont to build a home in Vermont would pay sales tax on the supplies, and a New Hampshire contractor bringing lumber and supplies into Vermont to build a home would be subject to Vermont's use tax. Moreover, any alterations made to these materials (i.e., converted into purlins, columns or trusses) at the construction site would not vary the tax consequences. Yet, under Morton's interpretation of 32 V.S.A. § 9773(1), if these alterations to the materials occur in another state (e.g. Pennsylvania), Vermont's use tax does not apply. This interpretation of § 9773(1) is clearly unfair to similarly situated building contractors and is contrary to the complementary nature of Vermont's sales and use tax.

We conclude that the building materials Morton purchased at retail outside Vermont were used in Vermont and are covered by § 9773(1). Consequently, the department's decision to impose a use tax on these materials was correct.

*Reversed.*