STATE OF VERMONT
WASHINGTON COUNTY, SS.



FILED
1999 DEC 29 A 9: 28

SUPERIOR C
WASHINGTON

Thomas C. Murphy and Carol A. Presley    )
                                         )      Washington Superior Court
v.                                       )      Docket No. 385-7-99 Wncv
                                         )
Department of Taxes                      )

## MEMORANDUM OF DECISION

This matter is before the court on the plaintiffs' appeal of a May 20, 1999 decision of the Commissioner of Taxes. Plaintiffs are represented by Edward A. Miller, Jr., Esq. The State is represented by Danforth Cardozo, III, Special Assistant Attorney General.

### Background

The crux of this case is the State's claim for payment by plaintiffs of a land gains tax arising out of their purchase of land for their residence. Under Vermont's land gains tax statute, 32 V.S.A. § 1000, sellers of land pay a special tax on profit they make on the sale of land held for less than six years. In this case, the seller who sold land to the plaintiffs would have had initial liability for the tax because it was the seller who realized the profit. The statute contains an exclusion for transactions in which the property will serve as the purchaser's primary residence but if a residence is not built or occupied within two years of purchase, then the transaction no longer qualifies for the exclusion and the tax becomes due and payable, with the unpaid tax constituting a lien on the land. See 32 V.S.A. § 10002(b). By this provision of the law, a seller who subdivides raw land can sell to a purchaser who intends to construct a private residence, and shift to the purchaser the risk of meeting the two-year deadline. If the purchaser does not occupy a residence on the land within two years of the purchase date, the purchaser becomes the taxpayer liable for the tax.

In July, 1994 the plaintiffs entered into a purchase and sale agreement with a developer called Robinson Springs Partnership (hereinafter "the developer"). (See Determination at 1.) Pursuant to the agreement, the plaintiffs purchased an undeveloped parcel of land. The closing took place on September 26, 1994. Also pursuant

1

to the agreement, the developer was to perform excavation and site work, as the plaintiffs intended to construct a residence on the property. (See id.) The plaintiffs intended to begin work building the residence during the winter of 1995-1996. (See id. at 2.) To avoid the imposition of the land gains tax, they needed to occupy their residence by September 26, 1996.

A dispute arose between the plaintiffs and the developers, and the site work was not completed as planned. (See id.) Plaintiffs brought suit in Lamoille Superior Court against the developers in late August, 1996, and made other arrangements for the site work. (See id. at 3.) They did not request as a remedy the land gains tax they would become obligated to pay if the home was not completed within two years. Prior to the deadline, plaintiffs did not request an extension of time to complete the residence. On September 26, 1996, two years from the date of transfer, the plaintiffs' residence was not ready for occupancy. (See id.) Plaintiffs eventually occupied their new residence in March, 1997. (See id. at 4.)

In the meantime, plaintiffs' lawsuit against the developer was pending, and there were a number of communications between the plaintiffs and the tax department regarding the two year occupancy requirement. In the fall of 1996, the Department wrote the plaintiffs to inquire as to whether their home was fit for occupancy within the two years from the date of purchase. The plaintiffs informed the Department that it was not. On December 2, 1996, the Department billed the plaintiffs $15,906.90, the full amount of land gains tax due on the property. In a letter dated January 2, 1997 plaintiffs' counsel specifically asked the Tax Department for "a waiver or an exemption." (Record 10, Ex. 30 at 1.) The Department did not respond with a clear determination. In a letter dated February 26, 1997 a Tax Department Examiner, Kelly A. Bain, acknowledges receipt of the "complaint" and asks that the plaintiffs: "Please notify me when you have moved into your new home and when . . . you have gone to court." (Ex. 31.) She informed that their tax assessment was "placed in appeal status pending the outcome of your complaint." (Determination at 4.) In another letter dated April 9, 1997 the Deputy Commissioner of Taxes, Earle E. Fennesy, states that: "I understand you have discussed the situation since this letter with Ms. Bain and you will be providing her with additional information." (Ex. 32a.) Mr. Fennesy goes on to write that "the appropriate action is to allow Ms. Bain the opportunity to review the additional information." (Id.) Correspondence between the parties indicates that plaintiffs were asked to provide the Tax Department with various documentation of their

2

situation including a copies of materials regarding the plaintiffs' lawsuit against the sellers, and a chronology of events relating to the construction of the home. (See Exs. 31, 33, 34, 35, 36.) They kept the Tax Department informed.

At no time did the Department notify the plaintiffs that the land gains tax was due in any event, no matter what the outcome would be of the plaintiffs' suit against the developer. A reasonable interpretation of the Department response was that if the plaintiffs prevailed in the lawsuit against the developer, the Department would not assess the tax. Otherwise, there would be no reason to await the outcome. At no time before the plaintiffs' litigation was concluded did the Department act on the plaintiffs' appeal.

The plaintiffs successfully pursued their litigation against the developer. On April 3, 1998, a jury in Lamoille County awarded the plaintiffs $53,000 on their breach of contract claim, and $100,000 in punitive damages. As of the hearing date, they had not yet collected any of the $153,000 jury award. (Determination at 4.)

On August 20, 1998, despite the plaintiffs' successful outcome in court, including prevailing on the punitive damages claim, the Tax Department scheduled a hearing on plaintiffs' appeal, following which it assessed the land gains tax due to failure to occupy within the two-year residency deadline. (See Determination at 1.) Plaintiffs unsuccessfully appealed to the Commissioner of Taxes. (See id.)


Discussion

Plaintiffs here seek review of the Commissioner's Determination. See 32 V.S.A. § 9617(e). Plaintiffs argue that the Tax Department should be estopped from collecting the taxes because of the representations arising out of the communications between the parties pending the plaintiffs' first appeal. The State counters that the statute must be strictly construed, and is applicable given the undisputed facts of this case.

Appeals of decisions of the tax commissioner are subject to review on the record, and the standard of review affords deference to the Commissioner's determination. See Morton Bldgs. Inc. v. Department of Taxes, 167 Vt. 371, 374 (1997) ("Commissioner's . . . findings should not be set aside unless clearly erroneous.") It is presumed "that decisions made within an administrative agency's area of expertise are correct, valid, and reasonable, absent a clear showing to the contrary." Close v. Superior Excavating Co., 166 Vt. 318, 321 (1997).

3

"In addition, 'absent compelling indication of error, the interpretation of a statute by the administrative body responsible for its execution will be sustained on appeal.'" See Morton Bldgs., Inc., 167 Vt. at 374 (citations omitted).

The Tax Department contends that the statute must be applied without exception based upon facts known to them at the outset -- that plaintiffs were not in occupancy at the two-year mark. The court agrees that the two year requirement must be strictly construed, and that the statute does not provide for either the Department or the court to become engaged in case-by-case determinations of whether or not it is equitable for particular purchasers of land who intend to build a residence but do not do so by the deadline to have to become responsible for the tax. The court endorses the reasoning set forth in Lumbra v. Department of Taxes, No. 225-93 OeC (Vt., Org. Super. Ct. Oct. 25, 1994). Therefore, the court concludes that the Department had a proper legal basis for assessment of the tax against plaintiffs when it first did so on December 2, 1996.

The issue then becomes whether the Department is estopped from proceeding to collect the tax because of the actions of the Tax Department during the period from January 2, 1997, when the plaintiffs sent to the Department the request that was treated by the Department as an appeal, and August 20, 1998 when the Department sent them a Notice of Hearing signifying that the tax was due irregardless of the fact that the plaintiffs had prevailed in their litigation against the developer. Plaintiffs contend that the Department should not be able to collect the tax because it led them to believe that the Department would abate the tax if the outcome of the suit against the developer supported their position. They contend that in reliance on the Department's position, they gave up the opportunity to include a claim for the land gains tax in their suit, and were consequently left without the ability to pursue a remedy for the tax liability against the developer, since that chance had been foreclosed once the Department acted on their appeal.

Estoppel is defined as: "An affirmative defense alleging good-faith reliance on a misleading representation and an injury or detrimental change in position resulting from that reliance." Black's Law Dictionary 571(7th ed. 1999). The plaintiffs have the burden of establishing four essential elements:

> first, the party to be estopped must know the facts; second, the party being estopped must intend that his conduct shall be acted upon or the acts must be such that the party asserting the estoppel has a right to believe it is so intended; third, the latter must be ignorant of the true facts; and finally, the party asserting

4

the estoppel must rely on the conduct of the party to be estopped to his detriment.

Beecher v. Stratton Corp., 10 Vt. L.W. 352, 352 (1999) (quoting Fisher v. Poole, 142 Vt. 162, 168 (1982)). The Court has also said that "'[e]stoppels against the government are rare and are to be invoked only in extraordinary circumstances,'" Wesco, Inc. v. State, 10 Vt. L.W. 251, 252 (1999) (quoting In re McDonald's Corp., 146 Vt. 380, 383 (1985)).

The plaintiffs' estoppel argument is based primarily upon communications directly from personnel in the Tax Department. In particular plaintiffs point to the letter from Tax Examiner Kelly Bain in which she stated: "Your claim has been placed in appeal status pending the outcome of your complaint. You will continue to get notices every 45 days updating the amount due but the collection division will not contact you requesting payment. Please notify me when . . . you have gone to court." (Ex. 31.) In addition plaintiffs point to the various requests for information from the Tax Department and the reference to these requests made by Deputy Commissioner Earle E. Fennesy, stating that: "I understand you have discussed the situation since this letter with Ms. Bain and you will be providing her with additional information." (Ex. 32a.)

Defendant contends that the second element, concerning the intention of reliance or implication of reliance, is not present in this case. Plaintiffs concede that no explicit statement granting them a waiver or exemption was ever made by defendant, but argue that the lengthy give and take between the parties is inconsistent with the defendant's later stance asserting strict construction of the statute. It is difficult to see how the conduct of defendant, specifically its ongoing communication with plaintiffs and requests for information on the Lamoille case, can be reconciled with their literal and absolute interpretation of the statute requiring residence within two years. In the view of this court plaintiffs were quite reasonably led to believe, and had a right to believe, that their situation was being monitored for the purpose of granting some sort of abatement.

Defendant also argues that the fourth element, actual reliance, is not present. The plaintiffs maintain that their conduct of the litigation in Lamoille County was impacted by the actions of the Tax Department. According to plaintiffs, their communications with the Tax Department indicated that the situation involving the dispute between the developer and the plaintiffs was actively being considered by the Tax Department in evaluating whether to impose the land gains tax. As a direct result, plaintiffs "relied on the tax department's representations to a

5

considerable extent and if they had not made these representations, it would have been a fairly simple matter to amend the pending court complaint . . . to add . . . a paragraph relating to liability and damages for land gains tax." (See Trans. at 7.) Plaintiffs' reliance on the conduct of the Tax Department, i.e. the ongoing communication and requests for documents concerning the Lamoille action, is shown by their conduct of the Lamoille case: they vigorously pursued the claim against the developer without including a claim to cover land gain tax liability because it reasonably appeared to be unnecessary. This reliance was to their detriment, since they lost the chance to add such a claim to the suit due to the 1½ year delay on the part of the Department in acting on their appeal. In the view of this court the fourth estoppel element is present in this case.

The Tax Department engaged in what appeared to be an ongoing review of this situation for the purposes of granting abatement. Their conduct led plaintiffs to believe that their situation was being monitored and considered. Plaintiffs acted in accordance with the clear implications of the representations of the Tax Department, without any reason to know otherwise, and as a result made choices that were later to their detriment. All four elements of estoppel are present.

It is important to distinguish this case from the situation in which taxpayer/purchasers who experience delays in constructing and occupying a residence within two years seek to avoid payment of the tax on the grounds that the acts of third parties caused their delays, and they should not be personally responsible. That is not the basis for this ruling. In fact, as stated above, the court concludes that as of December 2, 1996, the Department correctly assessed the tax against the taxpayers because the plaintiffs had failed to meet the requirements of the statute. The crux of this case is that between January 2, 1997 and August 20, 1998 – over 19 months – the Department failed to make a decision on whether or not the tax was due, and during that period, the four elements of estoppel were satisfied: (1) The Department knew that the plaintiffs were not getting a clear answer from the Department on their appeal of the assessment and that the Department had told the plaintiffs that no collection action would proceed against them; the Department knew the progress of the litigation against the developer; and the Department also knew that the law supported assessment of the tax obligation regardless of the outcome of the litigation. (2) The conduct of the Department was of a nature that the plaintiffs reasonably had a right to believe that if they were successful in the lawsuit, the Department would not seek to impose the tax liability on them. Department personnel,

6

including a Tax Examiner and the Deputy Commissioner, explicitly wrote to them suggesting that no decision would be made about the case pending the outcome of the litigation and seeking additional substantive information about the lawsuit. The conduct of the Department in delaying the appeal without resolution during this period also had this effect. (3) The plaintiffs had no way to know that the Department would assess the land gains tax against them anyway, no matter how the lawsuit turned out, since they had no recourse but to await the outcome of their appeal. (4) The plaintiffs relied on the Department to their detriment, in that they gave up the opportunity to pursue a claim against the developer for land gains tax liability in the civil litigation.

The facts that give rise to estoppel in this case were all in the hands of the Department, and not in any way dependent on the conduct of third parties. The Department has the ability to prevent such a situation from recurring in the future by not engaging in the conduct that took place in this case. Thus, this is the sort of extraordinary circumstance in which estoppel against the government may properly be invoked.

## ORDER

Based on the foregoing reasons, the Determination of the Commissioner of Taxes is REVERSED.

Dated at Montpelier, Vermont this _25th_ day of _December_ 1999.

Hon. Mary Miles Teachout
Superior Judge, presiding

7