## John Rock v. Department of Taxes

[742 A.2d 1211]

No. 97-398

Present: **Dooley, Morse, Johnson and Skoglund, JJ., and Norton, Supr. J.,**
**Specially Assigned**

Opinion Filed September 10, 1999

*Francis X. Murray*, South Burlington, for Plaintiff-Appellant.

*William H. Sorrell*, Attorney General, and *Danforth Cardozo, III*,
Special Assistant Attorney General, Montpelier, for Defendant-Appellee.

**Skoglund, J.** We explore today under what circumstances the Tax Department may hold an individual personally liable for a corporation's delinquent trust taxes, especially those of a small, closely held corporation. Appellant John Rock appeals the superior court decision affirming the Tax Department's ("Department") determination that he is personally liable for outstanding trust taxes owed by Whitecaps, Inc. He argues that the Department applied the wrong legal standard in concluding he was personally responsible for the taxes, that the Department erroneously inferred a duty to remit taxes from the mere fact of his position as president, and that the Department denied him due process. We affirm.

## I. Background

The Department made the following findings. In January 1990, appellant and Christina Czechut incorporated Whitecaps, Inc. as a Vermont corporation to operate a snack bar and catering business in a building leased from the City of Burlington. Appellant held seventy percent of the shares and was the president and a director of the corporation. He negotiated the ten-year lease of the business premises, personally guaranteed start-up loans and lines of credit for $40,000, and was a signatory on the corporate checking account with unrestricted authority to sign checks. Appellant signed some payroll checks and checks for purchase of business equipment. He co-owned a vehicle with the business and also shared a post office box with it, i.e., his personal address doubled as the business address for Whitecaps as well as his other businesses, Fresh Water Haulers, Inc., and Modern Septic Tank Service, Inc. Although appellant denied opening Whitecaps mail, the Department chose to believe instead Czechut's testimony that he opened all types of mail sent to his address including correspondence from the Tax Department. He used his personal accountant of twenty years to provide accounting services for Whitecaps. Appellant signed an undated application to obtain a federal identification number for Whitecaps and was the designated person for Whitecaps tax matters on the 1991 federal corporate income tax return. Appellant's accountant prepared 1990 and 1991 corporate tax returns. The business did not file returns for subsequent tax years. A W-2 form for 1992 reflects that appellant received approximately $4,400 in wages from Whitecaps.

Czechut held thirty percent of the corporation's shares. She acted as the treasurer and a director of the corporation. She took primary responsibility for the daily operations of the Whitecaps restaurant,

although appellant renovated the restaurant space initially and stopped by almost daily to assist with the business. Moreover, despite appellant's denial that he had hiring or firing authority, the Department found that he did have such authority because he participated in hiring at least one employee, his son. In September 1991, appellant and Czechut began living together, and in January 1992 they jointly purchased real estate as their primary residence. The couple ceased living together in May 1993, and Czechut resigned her corporate office in April 1994. During her involvement with the business, Czechut discussed Whitecaps business affairs and tax liabilities with appellant, such as Czechut's settlement of previous past due tax liabilities — which are not at issue here — with a Department compliance officer. Czechut and appellant prepared rooms and meals tax returns together either at the office, restaurant, or home. The Department did not believe appellant's testimony that he and Czechut discussed the financial affairs of C.J. Enterprises, Inc., a second restaurant business in which they each held fifty percent of the shares, but never discussed financial matters concerning Whitecaps.

In March 1994 when appellant learned that the bank loan to Whitecaps, which he had personally guaranteed, was not being paid, he locked Czechut out of the Whitecaps' leased premises and arranged for another business to sublease the premises, take over operation of the restaurant, and assume payments on the Whitecaps bank loan. According to the Department, Czechut then resigned in part out of her disagreement with the sublease terms appellant had negotiated. On October 18, 1994, the Department sent a personal tax assessment letter, signed by Earle Fennessey, to appellant for Whitecaps' outstanding withholding taxes, rooms and meals taxes, and sales and use taxes, totaling at that point, including interest, penalties, and late fees: $16,480.37. See 32 V.S.A. §§ 5844(a) (withholding), 9279 (rooms and meals), 9701(14) and 9703 (sales and use). The Department held Czechut personally liable as well for the trust taxes, but had been unable to collect from her.

■ At issue in this case are withholding, sales and use, and rooms and meals taxes. These are commonly termed "trust taxes" because the business withholds or collects the taxes on behalf of the state from a third party and holds them in trust until remittance to the state is due. See 32 V.S.A. § 5844(b) (sums withheld deemed to be held in trust for state); *Bud Crossman Plumbing & Heating v. Commissioner of Taxes*, 142 Vt. 179, 185-86, 455 A.2d 799, 801 (1982) (vendor is tax collector on behalf of state, purchaser is actual taxpayer of sales

tax); see also *Slodov v. United States*, 436 U.S. 238, 241-42 (1978) (noting that withheld employee wage and FICA taxes are commonly referred to as "trust fund taxes" to reflect code provision that such withholdings or collections are deemed to be special fund in trust for United States). The three types of taxes at issue in this case have the same character in that the business collects the taxes on behalf of the state from third persons, either employees or customers, and later must account for the sums and remit them to the state. See *State v. Equinox House, Inc.*, 134 Vt. 59, 61, 350 A.2d 357, 358 (1975). The statutes in effect at the time of this dispute stated in pertinent part:

> Any person who fails to withhold the required tax or to pay it to the commissioner as required . . . shall be personally and individually liable for the amount of such tax; and if the person is a corporate entity, the personal liability shall extend . . . to any officer or agent of the corporation who as an officer or agent of the corporation is under a duty to withhold the tax and transmit the same to the commissioner . . . .

32 V.S.A. § 5844(a).

> All taxes required to be paid by operators and all increases, interest and penalty thereon, shall become from the time due and payable to the commissioner, a personal debt from the operator liable to pay the same to the state of Vermont to be recovered in a civil action . . . .

32 V.S.A. § 9280(a); see also 32 V.S.A. § 9202(4) (where operator is corporation, defining operator to "include any officer or agent of such corporation who, as an officer or agent of the corporation, is under a duty to pay the gross receipts tax to the commissioner as required by this chapter).

> Persons required to collect tax . . . include every vendor of taxable tangible personal property or services, every recipient of amusement charges. These terms shall also include any officer or employee of a corporation or of a dissolved corporation who as that officer or employee is under a duty to act for the corporation in complying with . . . this chapter and any member of a partnership.

32 V.S.A. § 9701(14); see also 32 V.S.A. § 9703 (personal liability). "The language varies slightly with each tax, but the practical effect is

the same": the statutory duty is imposed personally on the corporate officer who, within the corporate structure, has a duty to collect and remit the taxes. *Equinox*, 134 Vt. at 61, 350 A.2d at 359. In other words, an officer's corporate duty becomes a statutory duty, "and personal liability attaches for nonperformance." *Id.*

Appellant contested the tax assessment letter. After an evidentiary hearing which Fennessey presided over, the Department concluded that, contrary to appellant's testimony in which he denied having any corporate responsibilities, his extensive financial and managerial involvement in the business indicated otherwise. From appellant's exercise of control over the financial affairs of the business, the Department inferred that remittance of taxes fell within his corporate duties. He appealed this determination to the superior court on the same grounds as he maintains in his appeal to this Court, and the superior court affirmed. The instant appeal followed.

## II. Discussion
### A. Legal Standard for Determining Duty to Pay Trust Taxes

On appeal, appellant primarily argues that the Department used the wrong legal standard in holding him personally responsible for Whitecaps' outstanding trust taxes. Relying on *Equinox*, appellant articulates the test for personal liability as whether the corporation ever specifically *delineated* tax remittance as an officer's duty, in contrast to the Department's enunciation of the standard as whether a corporate officer had *authority* to remit tax payments or had *control* of the company's financial and managerial affairs. He further contends that in direct contravention of our holding in *Equinox* the Department inferred his duty to collect and remit taxes solely from his position as president.

We review the case under the same standard as applied in the intermediate appeal to the superior court. Thus, we will not set aside the Department's findings of fact unless clearly erroneous. While conclusions of law are not so protected, we accord deference to the Department's construction of tax statutes so long as they are being construed rather than reconstructed. See *Tarrant v. Department of Taxes*, 169 Vt. 189, 195, 733 A.2d 733, 738 (1999).

In *Equinox*, as here, the State sought to impose personal liability on the president of the corporation for outstanding income withholding, sales and use, and rooms and meals taxes under the respective statutes authorizing such liability for nonperformance of a duty to

withhold or collect and then remit such taxes. See 134 Vt. at 61, 350 A.2d at 358. In that case, we affirmed dismissal of the complaint for failure to state a cause of action. In light of the fact that "Vermont statutes confer no express duties upon corporate presidents and treasurers as such, leaving their delineation to bylaws and director resolutions," we held that "the failure of the State to allege such duties . . . leaves the complaint lacking in an allegation necessary to impose liability." See *id.* at 62, 350 A.2d at 359.

Appellant misconstrues our holding in *Equinox* to require a definitive assertion by the corporation, such as a bylaw or director's resolution, defining tax remittance as a particular officer's duty before that officer can be held liable for nonperformance. We inserted the parenthetical phrase "leaving their delineation to bylaws and directors resolutions" not as an exclusive standard for determining which officers have a corporate duty to remit taxes, but rather to emphasize the way in which the particular complaint at issue was deficient and to provide an example of the type of allegation that would suffice. The example was illustrative, not exhaustive. *Equinox* therefore did not narrowly circumscribe the manner of proof on the corporate duty element, as the appellant would have it. Indeed, were appellant's interpretation of the personal liability statutes correct, mere silence by the corporation would effectively eviscerate the statutory remedy against corporate officers and employees for non-payment of the taxes they collect and hold in trust for the state.

Appellant further protests the Department and superior court's reliance on the standard articulated by federal courts interpreting the analogous "responsible person" statute, 26 U.S.C. § 6672:[1] that general authority and control to act for the corporation, especially regarding payment of creditors and disbursal of funds, is sufficient to find a corresponding duty. See, e.g., *United States v. Landau*, 155 F.3d 93, 100 (2d Cir. 1998) (stating "responsible person" test as whether individual has significant control over enterprise's finances); *Godfrey v. United States*, 748 F.2d 1568, 1576 (Fed. Cir. 1984) (absent evidence chairman of board had or exercised control of collection, accounting for, and payment over of taxes, he was not "responsible person" liable

---

[1] "Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over." 26 U.S.C. § 6672(a).

for failure to pay over withholding taxes); *Schwinger v. United States*, 652 F. Supp. 464, 466 (E.D.N.Y. 1987) (duty for ensuring that withheld taxes are remitted to government generally found in high-level corporate officials charged with control over corporate business affairs who participate in decisions concerning payment of creditors and disbursal of funds). He claims that both the Department and superior court erred by employing this federally-derived standard, and, alternatively, that even if it were permissible to turn to the federal legal standard to evaluate existence of a duty under the state statute, the Department and superior court then erred by failing to assess the facts under the willfulness prong of the federal personal liability statute.

The superior court cited *Schwinger* in its decision, and, while the Department supported its conclusions with *Equinox*, its findings closely tracked federal factors for determining existence of a duty to remit such taxes. See *Landau*, 155 F.3d at 100-01 (factors include whether person is officer or board director, owns shares or possesses entrepreneurial stake in company, actively manages company day to day, has hiring and firing authority, controls order in which outstanding debts are paid, controls daily bank accounts and disbursement records, and has check-signing authority); *White v. United States*, 372 F.2d 513, 516-17 (Ct. Cl. 1967) (citing similar factors; noting additionally that defendant drew weekly salary, used his address for most business mail, ordered materials and supplies, conducted business correspondence, negotiated all contracts, and prepared invoices); *Cassidento v. United States*, 90-1 USTC (CCH) ¶ 50,171 (D. Conn. 1990) (silent partner, who visited two related businesses regularly, loaned money to corporations and guaranteed credit extended to them, and issued personal check to IRS in partial satisfaction of trust tax liability, had duty). Since *Equinox* does not detail factors to consider in determining existence of a duty to remit trust taxes and the Legislature has not acted in the interim to further define corporate officers' duties, neither the Department nor the superior court erred by reviewing federal cases. Although federal precedent would not be binding in this instance, we have often looked to federal case law as instructive in developing similar areas of state law. See, e.g., *Rule v. Tobin*, 168 Vt. 166, 169, 719 A.2d 869, 871 (1998) (looking, in absence of helpful state precedent, to federal cases interpreting federal civil rule of procedure); *State v. Austin*, 165 Vt. 389, 393-94, 685 A.2d 1076, 1079-80 (1996) (although it is axiomatic that federal district court decisions are not binding on this Court, well-reasoned

decisions have persuasive value); *In re D.L.*, 164 Vt. 223, 228 n.3, 669 A.2d 1172, 1176 n.3 (1995) (noting that decision draws on federal case law for analysis and support of state separation of powers jurisprudence as Vermont and United States Supreme Court have same judicial powers).

The superior court was careful to recount the differences as well as the similarities between the Vermont and federal statutes. The starkest discrepancy between the two statutes is that for personal liability to attach under federal law, beyond a duty to remit trust taxes, there must be a willful failure to do so. Thus, careful attention to the statutory distinction explains why the Department and superior court did not undertake a willfulness analysis. Nevertheless, an analysis of whether the Legislature meant liability to depend also on some form of scienter or intent would have been helpful. If the Legislature did not intend for the personal liability statute to contain a scienter requirement, then, absent such a requirement to balance the broadest reaching interpretations of a duty to remit taxes under federal case law,[2] wholesale adoption of the federal factors for determining existence of a duty might extend the force and operation of the personal liability statutes beyond the clear import of the language and legislative intent. Cf. *International Bus. Machs. v. Department of Taxes*, 133 Vt. 269, 277, 336 A.2d 158, 163 (1975) (noting well-settled rule that doubts are resolved against taxing power and in favor of taxpayer).

In addition to case law construing analogous federal provisions, we often review other states' interpretations of similar statutes. Here, the relative paucity of reported state trust tax cases, see Annotation, *Construction, Application, and Effect, with Respect to Withholding, Social Security, and Unemployment Compensation Taxes, of Statutes Imposing Penalties for Tax Evasion or Default*, 22 A.L.R.3d 8 (1968 and Supp. 1998), compared with the abundance of federal cases, probably turned the Department and superior court's attention to

---

[2] We note that in the development of federal case law the duty element was construed broadly based on the fact the willfulness element existed to narrow the scope of responsible persons. Expansion of the duty element was then accompanied by erosion of the willfulness element. Compare *White*, 372 F.2d at 520-21 (willfulness means deliberate choice voluntarily, consciously, and intentionally made to prefer other creditors over government), with *Godfrey*, 748 F.2d at 1577 (willful conduct includes reckless disregard of obvious risk). Federal courts now widely apply the recklessness standard as a subspecies of willfulness. See, e.g., *Denbo v. United States*, 988 F.2d 1029, 1034 (10th Cir. 1993) (holding director of closely held corporation liable for disregarding known risk when he relied on president's assurances "instead of doing more" to ensure taxes remitted).

federal law. Few as the state cases are that have considered personal liability for trust taxes beyond a simple tracking of the federal factors, we find it instructive to examine them.

The Oregon Supreme Court noted, without endorsing, its state department of revenue's inclusion of "knowledge of the nonpayment of the withholding taxes" as a factor in determining corporate officer liability for failure to pay over withholding taxes, see *Olson v. Department of Revenue*, 744 P.2d 240, 245 (Or. 1987), even though that state's statute, like ours, contains only a duty element, not a willfulness one. See *id.* at 241 (citing ORS § 316.162(3)(b)). In contrast to this approach, the Ohio Supreme Court rejected outright the notion that a "willfulness" requirement should be read into the state statute imposing personal liability on corporate officers for unremitted sales tax, stating that it would be contrary to rudimentary statutory rules of construction. See *Lawrence v. Lindley*, 418 N.E.2d 1351, 1353 n.2 (Ohio 1981). We agree with this approach. Since the Vermont statute contains no scienter element to impose liability, we cannot add one. See *State v. O'Neill*, 165 Vt. 270, 275, 682 A.2d 943, 946 (1996); *State v. Fuller*, 163 Vt. 523, 528, 660 A.2d 302, 305 (1995).

Turning to the duty element, the legislative history is uninformative concerning the purpose behind the statutes imposing personal liability for unremitted trust taxes. Nonetheless, we conclude that the underlying purpose of these statutes is the same as the federal responsible-person statute. While the Legislature chose not to include the scienter element present in the comparable federal statute, it is evident that the Legislature designed the state trust tax statutes along the same lines as the federal one: "[T]o cut through the organizational form and impose liability upon those *actually* responsible for . . . failure to . . . pay over the tax." *Godfrey*, 748 F.2d at 1574 (emphasis added). As a result, whereas the federal statute utilizes two elements, duty and willfulness, to establish a sufficient nexus between nonpayment and the person or persons ultimately deemed responsible for failing to pay the trust taxes, our statute employs a single element, duty, to accomplish the same purpose. See *Schwinger*, 652 F. Supp. at 467. Again, we refer to cases from other states for illumination on this point.

Rather than employing the very specific federal elements comprising a duty to remit trust taxes, the Indiana Supreme Court maintains three more general considerations — the first two of which we likewise mentioned as relevant considerations in *Equinox*. See *Department of State Revenue v. Safayan*, 654 N.E.2d 270, 273 (Ind.

1995). First, Indiana looks at the "person's position within the power structure of the corporation," second, at the "authority of the officer or employee as established by the articles of incorporation, bylaws, or . . . employment contract," and third, at "whether the person actually exercised control over the finances of the business." *Id.*; cf. *Equinox*, 134 Vt. at 60-61, 350 A.2d at 358-59. Whereas federal courts take a more or less cohesive view of the first consideration, i.e., that titular authority is not sufficient by itself to establish a duty, they have varied in the expansiveness with which they construe the last consideration. Federal courts have gone beyond evidence of actual control over the corporation's finances to consider almost any indicia of managerial control or fiscal authority sufficient to satisfy the duty element. The Indiana court recognizes that the very specific factors enumerated by federal courts, and followed by many state courts, may be a relevant part of the inquiry but only insofar as they demonstrate the individual actually exercised control over corporate finances. See *Safayan*, 654 N.E.2d at 273 n.3 (using factor of hiring and firing power as example).

We agree with and adopt this approach.[3] Thus, for instance, the managerial functions set forth as federal factors, like hiring and firing authority, may be relevant in some cases but not in others. We can envision circumstances under which the fact that an individual has the power to hire and fire employees, combined with other facts, may indicate that the person regularly took responsibility for employee withholding taxes. The Department's findings include the fact that appellant in this case exercised hiring authority by hiring his son. Its conclusions do not analyze how the fact is relevant to the duty inquiry in this case. We conclude that, standing alone, the fact demonstrates little in relation to his control of the finances.

As for appellant's contention, however, that the Department inferred he had a duty to remit the trust taxes at issue from the mere fact of his status as president of the corporation, a quick review of the record and the Department's findings demonstrates to the contrary that they are replete with factors establishing appellant's authority

---

[3] In adopting this approach, we do not thereby endorse the remainder of the *Safayan* decision. After carefully articulating a standard more constrained than the federal one, the court then proceeds to more or less ignore its own newly wrought test in the particular case at hand. See 654 N.E.2d at 274-75 (where passive investor in closely held restaurant venture later became active trying to save it from bankruptcy, court relied on federal cases stating that existence of authority over finances, regardless of actual exercise thereof, is determinative of liability).

and control over the corporation's finances and his frequent exercise of that authority and control. By adopting the three-part inquiry set forth above (position of person in corporation, person's authority as established in bylaws or contract, and person's actual exercise of control over finances), with specific federal factors having potential but not automatic relevancy, we deliberately place the focus of the inquiry on substance over form — a focus that while professed at the federal level is lost in much of the case law. Thus, holding a corporate office alone does not create a duty under the personal liability statutes to remit trust taxes. Nor does authority to sign checks on behalf of a corporation — particularly in the context of a closely held corporation where most corporate officers are likely to have authority to make disbursements, see *In re Coveney*, 217 B.R. 362, 365 (D. Mass. 1998) — establish a solid foundation upon which to base a liability determination. See *Schwinger*, 652 F. Supp. at 467. And, even in a closely held corporation such as the one involved here, the small number of shareholders and their often close relationship is not sufficient in and of itself to circumvent corporate identity. See *Coppa v. Taxation Div. Dir.*, 8 N.J. Tax 236, 245 (1986).

Here, the Department developed a record that went well beyond officer status and check-signing authority. Appellant was intimately involved with the business financially, including setting up and guaranteeing loans and appearing on federal documents as the designated person for tax matters.

Appellant simply ignores the weight of the evidence against him. Ultimately, we are led to the conclusion that appellant attempts to frame as a legal question what is more properly characterized as a credibility determination made by the Department as the finder of fact. Appellant testified that he had no responsibilities as president of the corporation — testimony that the Department did not find credible in light of appellant's numerous activities related to the corporation's financial matters. The Department rejected appellant's denial that he frequently discussed Whitecaps' finances with Czechut, regularly prepared tax documents together with Czechut, and routinely opened Whitecaps mail. The decision how to resolve contradictory evidence is properly left to the province of the fact finder. See *State v. Tenney*, 143 Vt. 213, 216, 464 A.2d 747, 748 (1983). The Department properly viewed appellant's actual authority and control over the corporation's financial affairs as evidence of his duty to pay over the trust taxes to the state.

## B. Due Process

Finally, appellant asserts he was denied due process because the Department used an administrative adjudicator to review his own initial determination imposing personal liability on appellant for Whitecaps' trust tax deficiencies. We first note that appellant's portrayal of the initial letter is not precisely accurate. The letter stated that the Department had determined appellant was under a duty to remit trust taxes, not that Fennessey had made the determination. Fennessey's signature did appear on the form letter as Director of Compliance. More importantly, appellant has shown no actual or potential bias by Fennessey. See *Richard v. Richard*, 146 Vt. 286, 288, 501 A.2d 1190, 1191 (1985) (requiring disqualification of assistant judge who had socialized for decade with litigant as judge's participation would cast doubt on impartiality of proceedings). Absent such bias, it is well settled that a hearing officer may both initiate and then adjudicate a case without violating due process because agency directors can act on the recommendations of investigators without losing their judicial balance. See *Department of Taxes v. Tri-State Indus. Laundries*, 138 Vt. 292, 296, 415 A.2d 216, 219 (1980).

*Affirmed.*