2004 VT 38

Douglas HOFFER v. Janet ANCEL and Charles Merriman

[852 A.2d 592]

No. 03-036

¶ 1. April 28, 2004. This appeal arises out of plaintiff Douglas Hoffer's dispute with the Vermont Department of Taxes (the department) over the department's adjustments for the years 1999 and 2000 to his education property tax assessments. In March 2002, plaintiff brought suit in the Chittenden Superior Court against Janet Ancel, State Tax Commissioner, and Charles Merriman, a department attorney (defendants), in their individual capacities under 42 U.S.C. § 1983 claiming that defendants had violated his due process and equal protection rights under the Fourteenth Amendment to the United States Constitution. In response to this suit, defendants filed a motion for summary judgment, arguing, among other grounds, that defendants were entitled to qualified immunity because plaintiff had not suffered any violation of his constitutional rights, any rights claimed were not clear and it was objectively reasonable for defendants to believe that their conduct did not violate plaintiff's rights. The trial court agreed with this argument and granted defendants summary judgment. We affirm.

¶ 2. The Equal Educational Opportunity Act of 1997 (Act 60) funds the state's educational expenses through a general state grant and local property taxes. See *Town of Killington v. State*, 172 Vt. 182, 183, 776 A.2d 395, 396 (2001). A component of Act 60, called "Homestead Property Tax Income Sensitivity Adjustment," limits educational property taxes paid by many homeowners and renters to a percentage of their income. See *Schiev-*

*ella v. Dep't of Taxes*, 171 Vt. 591, 592-93, 765 A.2d 479, 481 (2000) (mem.); 32 V.S.A. §§ 6066(a), (b), 6066a(a).[1] To achieve the property tax limitation, the department pays prebates in advance of the taxpayer receiving a property tax bill from the municipality to help pay that bill, and then reconciles the proper amount of the adjustment in connection with taxpayer's next income tax return. See 32 V.S.A. § 6066a(a), (b). The prebate represents the difference between the statutory percentage of expected income for the year and the property taxes on the homestead.[2] When a homestead is jointly owned by two or more individuals, and they are not all in the same household, the property taxes for purposes of the adjustment calculation are allocated between the individuals in proportion to their ownership interest. See *id.* § 6062(c). Here, plaintiff, who co-owns his homestead fifty-fifty with another individual who resides elsewhere, but pays all the associated property taxes, applied for and received a $323.71 prebate for 1999. This prebate amount was based on the department's erroneous assumption that plaintiff was the sole owner of the homestead and, thus, all the property taxes on it were attributable to him.

¶ 3. The following year plaintiff again applied for a prebate. After not receiving his prebate, plaintiff called the department to check its status. At this time, plaintiff was informed that, although no formal action had been taken, the department would deny his 2000 application because he co-owned his homestead. Plaintiff was also informed that the department was planning on initiating a

---

[1] The description in the text is a simplified description of the comparison.

[2] Homestead is defined in 32 V.S.A. § 5401(7) as the "principal dwelling owned and occupied by a resident individual" and up to two acres of surrounding land.

recovery action for some or all of the 1999 prebate that was paid under the erroneous assumption that plaintiff was the only owner of the homestead. During this conversation and an ensuing exchange of electronic mail messages, plaintiff was told he had a right to appeal the forthcoming adjustments to his property tax liability. Following this conversation, plaintiff filed an administrative appeal seeking to declare § 6062(c) unconstitutional because it allocated only half of the property taxes to him for purposes of calculating the prebate even though he actually paid all the property taxes on the homestead. Plaintiff's lawyer received an acknowledgment of the appeal on October 2, 2000 and notice that it had been docketed on October 11, 2000. In the appeal, plaintiff alleged that the statute created an irrebutable presumption that violated his Fourteenth Amendment due process and equal protection rights. That administrative appeal, which is not the direct subject of this case, was denied by the department. Recently, the Washington Superior Court affirmed this denial, finding § 6062(c) constitutional.

¶ 4. In October 2000, the department made the necessary adjustments and billed plaintiff $225.71, plus interest and penalties, for his 1999 prebate. The bill did not clearly specify what it was for — in the box for the "reason code" the code for an "error in calculation" was inserted, but there was no further explanation. In response, plaintiff sent a letter to the Commissioner of Taxes appealing the bill, asking for the basis of the assessment and adding the name of the attorney who he employed with respect to his Act 60 prebate. Plaintiff received another similar bill two months later and sent another letter, similar to the first one and noting that the department had not responded to his appeal of the first bill.

¶ 5. In early January 2001, in response to plaintiff's letters to the department, defendant Merriman corresponded with

plaintiff's attorney, stating that the two bills were for the return of the 1999 prebate and providing a breakdown of the calculation behind the bills. The letter added that "we have not received payment from Mr. Hoffer [and] ... additional penalties and interest are accruing at this time." Following the Merriman letter, plaintiff continued to receive regular bills and on April 3, 2001 received one delinquent debt notice from a collection agency.

¶ 6. Ordinarily, if a taxpayer appeals an assessment, the department puts the account in "appealed status," and the taxpayer does not receive further demand or collection agency notices. In this case, plaintiff's account was not immediately placed in that status. It was placed in that status after plaintiff's lawyer complained about the collection agency notice, and thereafter plaintiff received bills showing the amount owed with interest, but not demands for payment.

¶ 7. Following the receipt of the collection agency notice, plaintiff filed suit in the U.S. District Court under 42 U.S.C. § 1983 against defendants. In that suit, plaintiff claimed defendants violated his due process and equal protection rights under the Fourteenth Amendment because: (1) the deficiency notices failed to provide him with meaningful notice; (2) defendants, in their attempt to recover the prebate overpayment, "threatened, harassed and annoyed" plaintiff; and (3) defendants were attempting to enforce a statute that facially violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment. The U.S. District Court dismissed that suit, holding that it was barred by the Tax Injunction Act, 28 U.S.C. § 1341, because plaintiff could seek an adequate remedy in state court. The dismissal was affirmed by the United States Court of Appeals. See *Hoffer v. Ancel*, No. 01-7880, 2002 WL 398421, at **4-5 (2d Cir. Mar. 14, 2002).

¶ 8. After the federal court dismissal was affirmed, plaintiff filed the lawsuit that is the subject of this appeal. In this matter, brought under 42 U.S.C. § 1983, plaintiff claimed defendants violated his due process rights because the notices of taxes due failed to provide adequate notice and because defendants had engaged in a campaign of "harassment and threats" in an attempt to intimidate plaintiff into repaying the 1999 prebate. In response to these alleged violations, plaintiff sought damages for his injuries, which included anxiety and emotional distress and "such other relief as is just."

¶ 9. While this matter was pending, and after defendants submitted their motion for summary judgment, the department heard plaintiff's administrative appeal where he sought to declare § 6062(c) unconstitutional and challenged his tax bills for 1999, 2000 and 2001. During this appeal, the testimony indicated that for the year 2000 the department preliminarily paid plaintiff $98.00, using calculations required by § 6062(c). In reconciling the payment in connection with plaintiff's 2001 income tax return, the department first determined that plaintiff was owed an additional $4.00. It also determined, however, that plaintiff had failed to supply proof of his local property tax assessment with his income tax return, and denied the whole claim and billed plaintiff for the $98.00 paid. The grounds for the department's action were explained at the hearing. After receiving this information, plaintiff submitted the appropriate property tax documentation, the $98.00 assessment was cancelled and plaintiff received the additional $4.00.

¶ 10. Subsequent to his administrative hearing, plaintiff made a motion to amend his complaint adding a claim against defendant Ancel under 42 U.S.C. § 1983, contending that she violated his constitutional rights with respect to the 2000 prebate. The relief requested remained the same. Defendant Ancel op-

posed plaintiff's motion, and in response plaintiff filed a reply memorandum in support of his motion to amend. In this memorandum, plaintiff stated, for the first time, that he was seeking declaratory relief against defendant Ancel that the department's actions were unconstitutional. The superior court considered plaintiff's motion to amend along with defendants' motion for summary judgment. By entry order, the court granted defendants' motion for summary judgment, finding "Defendants' acts objectively reasonable. No showing of bad faith. Case dismissed." On the same day, the court denied plaintiff's motion to amend, stating, "[s]till a damages claim. Immunity still applies."

¶ 11. Plaintiff now appeals the superior court's grant of summary judgment for defendants. On appeal, plaintiff claims that defendants, under 42 U.S.C. § 1983, violated his constitutional rights with respect to plaintiff's 1999 and 2000 prebates.[3] In opposition, defendants argue, as they did below, that they are entitled to qualified immunity because they did not violate any of plaintiff's constitutional rights.[4] For the reasons set forth below, we agree.

---

[3] Because the trial court reached the merits of plaintiff's motion to amend, for the purposes of this decision we treat the complaint as amended and consider plaintiff's claims with respect to his 2000 prebate.

[4] They also claimed that plaintiff had failed to allege the requisite personal involvement of defendants in the complained of department actions, that a § 1983 action could not be brought with respect to tax administration actions and that defendants were entitled to absolute immunity. Defendants have argued these points here as alternative grounds for affirmance. In view of our disposition, we do not reach them.

¶ 12. Applying the doctrine of qualified immunity, the trial court granted defendants summary judgment. When reviewing a grant of summary judgment, we apply the same standard as the trial court: summary judgment will be granted only if there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Springfield Hydroelec. Co. v. Copp*, 172 Vt. 311, 313, 779 A.2d 67, 70 (2001). The doctrine of qualified immunity "protects lower-level government employees from tort liability when they perform discretionary acts in good faith during the course of their employment and within the scope of their authority." *Winfield v. State*, 172 Vt. 591, 593, 779 A.2d 649, 652 (2001) (mem.). The viability of this defense depends on the "objective reasonableness of the official's conduct in relation to settled, clearly-established law." *Id.* Accordingly, as a threshold matter plaintiff must establish that defendants' acts violated his constitutional rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Further, the clearly established right defendants are alleged to have violated must be "specific to the circumstances." *Cook v. Nelson*, 167 Vt. 505, 512, 712 A.2d 382, 386 (1998). Broad statements of rights are inadequate. *Id.*

¶ 13. On this record, we cannot find that defendants violated plaintiff's due process or equal protection rights. With respect to plaintiff's 1999 prebate, he claims: (1) the assessment notices issued by the department violated his due process and equal protection rights to meaningful notice; and (2) the department's failure to stop the notices once he appealed violated his due process and equal protection rights. Regarding his 2000 prebate, plaintiff claims defendant Ancel violated his due process and equal protection rights because she acted in retaliation for plaintiff's federal lawsuit and failed to give notice that he could avoid repaying the prebate if he provided his property tax bill.

¶ 14. While we understand plaintiff's concerns about his treatment by the department, defendants' conduct does not rise to the level of a constitutional violation. If we understand plaintiff's due process argument, it is that he was entitled not to be billed for a tax assessment that was under appeal, especially where the reason for the bill was unclear. With respect to the 2000 prebate, he appears to go further and argue that he had a right to be notified of how he could cure the filing deficiency that resulted in the bill. The Due Process Clause requires procedural safeguards against unlawful exactions. See *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 36-37 (1990). As *McKesson* makes clear, however, due process is fully secured by a system that requires the taxpayer to pay the tax before having a right to contest it by way of refund. *Id.* at 37; see also *Williams v. State*, 156 Vt. 42, 56, 589 A.2d 840, 849 (1990). If plaintiff may be required to pay the tax liability in order to obtain the right to contest it, we will not find a due process violation based on the fact that plaintiff was billed while his liability was still being adjudicated. Cf. *Morales v. Haynes*, 890 F.2d 708, 710 (5th Cir. 1989) (per curiam) (seizure by IRS agent of property without notice to pay tax liability does not violate due process as long as there is an opportunity for post-collection review). With respect to the content of the bills, or lack of content, we conclude that plaintiff was fully protected by his right to appeal, of which he was aware and exercised that right. See *Thomas v. Ind. Dep't of State Revenue*, 675 N.E.2d 362, 366-67 (Ind. Tax Ct. 1997) (eventual hearing cured failure of tax department to recognize taxpayer's protest of assessment); *GNOC, Corp. v. Director, Div. of Taxation*, 746 A.2d 466, 473 (N.J. Super. Ct. App. Div. 2000) (although assessment notice failed to state reason for assessment, opportunity for hearing cures any due process violation). Moreover, he received appropriate explanations of the reasons for the department's actions, albeit not in as timely a fashion as might be desirable.

¶ 15. Overall, we concur with the analysis of the United States Court of Appeals for the Seventh Circuit with respect to damage suits against IRS agents in the leading case of *Cameron v. Internal Revenue Serv.*, 773 F.2d 126, 128-29 (7th Cir. 1985):

> But the argument becomes completely untenable when as in this case the only claim is that the agents made mistakes, subjected the taxpayer to unnecessary inconvenience, failed to explore possibilities for settlement, or otherwise failed to come up to the highest standards of conduct for government officers dealing with citizens. In an era of heavy taxation, many taxpayers, not merely "tax protesters," feel intense irritation at the federal tax authorities, and the courts would be flooded with frivolous cases if the unavoidable frictions generated by tax collection gave rise to potential damage claims against internal revenue agents. Maybe if the complaint sketches a portrait of a lawless and arbitrary vendetta fueled by the power of the state, designed to harass by unwarranted intrusion into the minutia[e] of their financial affairs, and intended to abuse by the creation of palpably unfounded claims against their property which they can set to right only by unnecessary litigation, the taxpayer can resist a motion to dismiss; but that is not the portrait sketched by the present complaint. Even when liberally construed, this complaint, if true, shows only that internal

revenue agents acted in a heavy-handed, insensitive, and careless fashion in processing the taxpayer's tax returns. For such conduct there is no damage remedy.

... [M]ore must be shown than a lack of courtesy, accuracy, and restraint by internal revenue agents in the processing of tax returns.

(internal citations and quotations omitted). See also *Foxman v. Renison*, 625 F.2d 429, 431-32 (2d Cir. 1980).

¶ 16. We are less clear on the substance of plaintiff's equal protection claim. As near as we can tell, he is intending to raise a selective enforcement claim, based, for example, on the argument that he would not have been billed if he had been properly placed in appeal status. An equal protection claim, however, requires more than a showing of different treatment. Plaintiff must show "selective treatment ... based on impermissible considerations such as race, religion, intent to inhibit the exercise of constitutional rights, or malicious intent to injure." *Parker v. Town of Milton*, 169 Vt. 74, 81, 726 A.2d 477, 482 (1998). Plaintiff has not alleged or shown an "illicit motive." *Id.*; see also *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000). The closest he has come is in his allegation that defendant Ancel did not inform him that he could cure the deficiency in his 2000 prebate filing by supplying a copy of his property tax bill because she was retaliating because of his federal suit.

¶ 17. We recognize that plaintiff claims that defendants have violated a variety of his statutory rights. See 32 V.S.A. §§ 3203, 5886(a)(1) & (2). Because plaintiff's complaint is based on the Civil Rights Act, 42 U.S.C. § 1983, he must show a violation of his constitutional rights, and allegations of statutory violations do not by themselves meet plain-

tiff's burden. See *Coliseum Enters., Inc. v. Campbell*, 173 Vt. 585, 587, 795 A.2d 1212, 1213-14 (2002) (mem.). In this case, we conclude that the statutory claims add nothing to plaintiff's argument.

¶ 18. Further, even if we could find that plaintiff could withstand summary judgment with respect to the substance of his claims, we must affirm the trial court's decision because defendants have not violated clearly established constitutional rights of which a reasonable person would have known. Beyond general statements of the content of due process and equal protection, plaintiff has not specified what clearly established specific constitutional rights defendants have violated. We can find none.

¶ 19. Finally, plaintiff argues that qualified immunity does not apply to plaintiff's declaratory judgment claim. See *Allen v. Coughlin*, 64 F.3d 77, 81 (2d Cir. 1995) (the doctrine of qualified immunity does not bar claims for injunctive or declaratory relief). Consistent with the analysis of the trial court, defendants argue that plaintiff failed to preserve this argument below. Although plaintiff's request for such other relief as is just might be construed broadly to cover declaratory relief, see *Nevitt v. Nevitt*, 155 Vt. 391, 398, 584 A.2d 1134, 1138 (1990), plaintiff never made this argument in response to defendants' motion for summary judgment. At best, he made the argument in his reply brief in support of the motion to amend. We agree with defendants that the argument was made too late to preserve it. In any event, our holding above that plaintiff has not made out any cause of action as part of our qualified immunity analysis means that he is also not entitled to declaratory relief.

*Affirmed.*