2012 VT 68

**Vermont Golf Association, Inc. v. Department of Taxes**

[57 A.3d 707]

No. 11-220

Present: **Reiber, C.J., Dooley, Skoglund, Burgess and Robinson, JJ.**

Opinion Filed August 10, 2012

---

226

*Paul S. Kulig, Stephen E. Crowley,* and *John P. Crowley* (On the Brief) of *Kulig & Sullivan, P.C.,* Rutland, for Plaintiff-Appellant.

*William H. Sorrell,* Attorney General, and *Danforth Cardozo, III,* Assistant Attorney General, Montpelier, for Defendant-Appellee.

¶ 1. **Skoglund, J.** Vermont Golf Association challenges the superior court's dismissal of its appeal from a decision by the Department of Taxes assessing sales and use tax on prior activities. The court based its dismissal on Vermont Golf's failure to provide security to the Commissioner of Taxes to perfect its appeal to the superior court pursuant to 32 V.S.A. § 9817. We affirm.

¶ 2. Vermont Golf sponsors golf tournaments throughout the state. Golfers pay entry fees to Vermont Golf, which thereafter pays "greens fees" to the golf courses on which the tournaments are held. The Department audited Vermont Golf for the period from March 2001 through February 2008 and assessed sales and use tax on the entry fees. Vermont Golf contested this assessment, and the Department credited it with the tax it had paid on the "greens fees." Beginning in March 2008, Vermont Golf, under protest, remitted to the Department the sales tax on the full amount of each entry fee it collected. Following a hearing, the Commissioner of Taxes concluded that the entry fees were subject to sales and use tax.

¶ 3. After Vermont Golf appealed to the superior court, the Department notified Vermont Golf that if it failed to pay security pursuant to § 9817, the Department could move to dismiss the

appeal. Vermont Golf did not provide security, and the Department moved to dismiss. The superior court concluded that § 9817 mandates security to pursue an appeal, and the court extended the time in which Vermont Golf could provide it. At that point, Vermont Golf offered to give a security interest in its assets, but the Department rejected this offer and renewed its motion to dismiss. Vermont Golf filed a motion under Vermont Rule of Civil Procedure 74(c) for a stay of the Commissioner's decision.

¶ 4. The superior court denied the stay and granted the Department's motion to dismiss the case. The court ruled that Vermont Golf had not complied with § 9817, which it concluded requires security to be posted to perfect an appeal. The court determined that Vermont Golf was required to choose one of three options for providing security: paying the deficiency, depositing the amount of the deficiency with the Commissioner, or filing a bond with the Commissioner in the amount of the deficiency. Vermont Golf's offer of a security interest did not, in the court's view, satisfy the statute. Thus, the court held that even if the court ordered a stay, Vermont Golf's failure to provide security was a jurisdictional defect precluding the appeal from going forward. Accordingly, it granted the motion to dismiss. This appeal followed.

¶ 5. Vermont Golf argues that: (1) failure to give security pending appeal is not a condition of an appeal compelling dismissal; (2) in the alternative, if security pending appeal is required, post-audit taxes remitted to the Department are a sufficient basis to allow an appeal; and (3) if security pending appeal is not required, the court abused its discretion in denying its motion for a stay. The State contends that: (1) in order to pursue an appeal, § 9817(a) requires taxpayers to "give security, approved by the Commissioner, conditioned to pay the tax levied"; (2) post-audit remittance of taxes is insufficient to obtain judicial review because the statute requires security in the amount of the deficiency; and (3) the court correctly denied Vermont Golf's request for a stay because the requirement that it give security before review was not an "agency decision" under V.R.C.P. 74(a).

¶ 6. Section 9817 of Title 32 provides as follows:

> (a) Any aggrieved taxpayer may, within 30 days after any decision, order, finding, assessment or action of the commissioner made under this chapter, appeal to the

superior court. *The appellant shall give security, approved by the commissioner, conditioned to pay the tax levied, if it remains unpaid, with interest and costs, as set forth in subsection (c) of this section.*

(b) The appeal provided by this section shall be the exclusive remedy available to any taxpayer for review of a decision of the commissioner determining the liability of the taxpayer for the taxes imposed.

(c) Irrespective of any restrictions on the assessment and collection of deficiencies, the commissioner may assess a deficiency after the expiration of the period specified in subsection (a) of this section, notwithstanding that a notice of appeal regarding the deficiency has been filed by the taxpayer, unless the taxpayer, prior to the time the notice of appeal is filed, has paid the deficiency, has deposited with the commissioner the amount of the deficiency, or has filed with the commissioner a bond (which may be a jeopardy bond) in the amount of the portion of the deficiency (including interest and other amounts) in respect of which review is sought and all costs and charges which may accrue against the taxpayer in the prosecution of the proceeding, including costs of all appeals, and with surety approved by the superior court, conditioned upon the payment of the deficiency (including interest and other amounts) as finally determined and all costs and charges. If as a result of a waiver of the restrictions on the assessment and collection of a deficiency any part of the amount determined by the commissioner is paid after the filing of the appeal bond, the bond shall, at the request of the taxpayer, be proportionately reduced.

(Emphasis added.)

■ ■ ¶ 7. "When interpreting a statute, our principal goal is to effectuate the intent of the Legislature." *Tarrant v. Dep't of Taxes,* 169 Vt. 189, 197, 733 A.2d 733, 739 (1999). If legislative intent is clear from the plain language of the statute, "the statute must be enforced according to its terms" without resorting to other aids to statutory construction. *Id.* If the statute is ambiguous, however, "legislative intent must be determined through consideration of

the entire statute, including its subject matter, [and its] effects and consequences." *Id.* Although ambiguous taxation statutes are generally construed in favor of the taxpayer, "absent compelling indication of error, the interpretation of a statute by the administrative body responsible for its execution will be sustained on appeal." *Morton Bldgs., Inc. v. Vt. Dep't of Taxes*, 167 Vt. 371, 374, 705 A.2d 1384, 1386 (1997) (quotations omitted).

¶ 8. The first sentence of § 9817(a) provides that any aggrieved taxpayer "may" appeal the Commissioner's decision to the superior court within thirty days of the decision, and the second sentence of the subsection states that the appellant "shall give security" as set forth in subsection (c) "if it [the assessed tax] remains unpaid, with interests and costs." Although the two conditions of an appeal — filing a notice of appeal within thirty days and posting security — are set forth in two separate sentences in subsection (a) rather than in one sentence, as in a previous iteration of the statute, the subsection plainly makes the posting of security mandatory to perfect an appeal to the superior court.

¶ 9. "Where a statute specifies acts to be done by parties to entitle them to maintain an action or to perfect an appeal, it is generally mandatory." 3 N. Singer & J. Singer, Sutherland Statutory Construction § 57:23 (7th ed. 2011); see *id.* § 57:15 (stating that statutory provisions "specifying the steps necessary to perfect appeals are mandatory"). Here, § 9817(a) mandates the posting of security for an appeal to the superior court. Thus, failure to post security is a fatal defect, regardless of whether we consider it to be jurisdictional in nature. Compare *Holden v. Campbell*, 101 Vt. 474, 476, 144 A. 455, 456 (1929) ("[W]hen the Legislature creates a remedy contingent upon its being asserted within a specified period of time or in a prescribed manner, such requirements must be substantially complied with in order to give the court jurisdiction.") with *Jos. L. Muscarelle Dev. Co. v. Manalapan Tp.*, 13 N.J. Tax 330, 335 (1993) (holding that, whether viewed as jurisdictional or merely quasi-jurisdictional defect, statute required that specified portion of taxes be paid "in order to maintain the appeal").

¶ 10. In short, § 9817(a) allows any aggrieved taxpayer to appeal to the superior court, but the taxpayer must provide security approved by the Commissioner to cover any tax that

remains unpaid. The statute requires that the taxpayer either pay the tax assessed or post approved security as a mandatory condition to appeal the Commissioner's decision to the superior court. "Many states have 'pay-to-play' statutes, which generally require that a tax be paid before it can be contested in court." D. Young, *Challenging State and Local Taxes on Constitutional Grounds*, 10 J. Multistate Tax'n & Incen. 12, 21 (2000). Requiring the paying of a tax before obtaining judicial review does not violate due process. See *Hoffer v. Ancel*, 2004 VT 38, ¶ 14, 176 Vt. 630, 852 A.2d 592 (mem.) (noting that United States Supreme Court made this clear in *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco*, 496 U.S. 18, 36-37 (1990), stating that "due process is fully secured by a system that requires the taxpayer to pay the tax before having a right to contest it by way of refund"); see *Akins v. Miss. Dep't of Rev.*, 70 So. 3d 204, 209 (Miss. 2011) (citing *McKesson* and noting that requiring payment of tax "before seeking judicial review has been held to provide taxpayers with a fair opportunity to challenge the validity of the tax").

¶ 11. Vermont Golf does not dispute the State's representation in this appeal that the Department of Taxes has always construed § 9817, as well as similar provisions relating to taxes on tobacco products and rooms and meals, as pay-to-play statutes. Further, Vermont Golf concedes that the language of § 9817(a) prior to 1998 — when the statute was amended to reflect its current language — required the posting of security to go forward with an appeal, notwithstanding any inconsistency in the language of § 9817(c). Vermont Golf contends, however, that the Legislature intended the 1998 amendment to eliminate the requirement that security be posted to proceed with an appeal to the superior court. We disagree.

¶ 12. The prior version of § 9817(a), enacted in 1969, see 1969, No. 144, § 1, was one long sentence providing that an aggrieved taxpayer could "appeal to the superior court, *by filing* a petition of appeal with the superior court as prescribed by law and on giving security . . . as set forth in subsection (c)." 32 V.S.A. § 9817(a) (1991) (emphasis added). We agree with Vermont Golf that this earlier version of § 9817(a) required the posting of security to proceed with an appeal to the superior court. Cf. *Baird v. State Dep't of Rev.*, 545 So. 2d 804, 805-06 (Ala. Civ. App. 1989) (construing similar language to mean that "the taxpayer must comply with each condition precedent [including posting bond] in order to perfect an appeal to the circuit court").

■ ¶ 13. According to Vermont Golf, the 1998 amendment, in which the current language of § 9817(a) was adopted, eliminated the security requirement for perfecting an appeal by placing that requirement in a second sentence separate from the first sentence containing the right to appeal. That is plainly not the case, however, as demonstrated by the purpose statement inserted with the 1998 amendment and by the legislative history of that amendment. The purpose section to Act 161, which amended § 9817 along with many other statutes dealing with appeals from administrative agencies to courts, states as follows:

> It is the intent of the general assembly that this act shall *clarify existing law and practice* by providing uniform language regarding appeals. *The act is not intended to make substantive changes to the law.* The act leaves questions such as choice between jury trial or court trial, de novo or on the record appeal, and scope of review to specific statutory provisions or prior practice governing appeals from particular agencies, including rules of court procedure.

1997, No. 161 (Adj. Sess.), § 1 (emphasis added). This statement of purpose unambiguously evinces a legislative intent merely to clarify existing law and practice while providing uniformity to language regarding appeals from administrative agencies to courts — without making any substantive changes to the law.

■ ¶ 14. Arguing that the new language inserted by the 1998 amendment concerns procedural rather than substantive matters, Vermont Golf would have us believe that, despite this statement of purpose, the Legislature intended the new language to change § 9817 from a pay-to-play statute into one that does not make the posting of security mandatory — a reading contrary to the Department of Taxes' longstanding interpretation of the statute that it is empowered to execute. Whether the change resulting from the 1998 amendment is labeled substantive or procedural in nature, construing it as eliminating the pay-to-play status of § 9817 would unquestionably impose a significant change to the meaning of the statute as long construed by the Department of Taxes — a change involving important public policy interests. See *F.M. Burlington Co. v. Comm'r of Taxes*, 134 Vt. 515, 518, 365 A.2d 531, 533 (1976) (stating that § 9817 is "a special statute"

vitally affecting public interests involving imposition and collection of taxes).

■ ¶ 15. Because of § 9817's special status, we held in *F.M. Burlington* that "the taxpayer's right of appeal" is governed, with respect to the availability of extensions of time to appeal, by § 9817, as opposed to the more general appeals statute and Vermont Rule of Appellate Procedure 4, which allow requests for extensions of time to appeal. *Id.* We were persuaded by the fact that the later-enacted general appeals statute included "no legislative intention providing an extension of the specific time limitations contained in a proceeding arising out of the special legislation creating the sales and use tax." *Id.* We reasoned that a later general appeals statute "not expressly contradicting" the earlier specific one could "not be considered as intending to affect the more particular or positive previous provisions, unless it is absolutely necessary to give the latter act such a construction." *Id.* at 518-19, 365 A.2d at 533 (quotation omitted). Here, of course, with a far more substantive change at stake, this rule of construction should have even greater force.

■ ¶ 16. This case has similarities to *Perry v. Medical Practice Board*, 169 Vt. 399, 737 A.2d 900 (1999). There, we concluded that the Medical Practice Board had the authority to deny a request to withdraw an application for a medical license. *Id.* at 405, 737 A.2d at 905. The appellant argued that a subsequent 1997 amendment to the relevant statute explicitly giving the board the power to deny a request to withdraw an application demonstrated that such power had been previously lacking. We stated that to attain the "fundamental objective" of discerning and implementing legislative intent, we would "look to the words of the statute itself, the legislative history and circumstances surrounding its enactment, and the legislative policy it was designed to implement." *Id.* at 406, 737 A.2d at 905; see *In re Dep't of Bldgs. & Gen. Servs.*, 2003 VT 92, ¶ 14, 176 Vt. 41, 838 A.2d 78 ("We have frequently relied upon legislative history where the meaning of the statute cannot be determined from the words alone."); *Mac-Donough-Webster Lodge No. 26 v. Wells*, 2003 VT 70, ¶ 6, 175 Vt. 382, 834 A.2d 25 ("In circumstances where the purpose and significance of a statute are unclear, we look to the statute's legislative history to 'shed light' on its meaning.").

¶ 17. Examining the 1997 amendment in *Perry*, we noted: (1) the amendment "was part of a larger, omnibus bill revising and

standardizing the procedures that govern the regulation of thirty-four separate occupations and professions"; (2) the board had a prior, longstanding policy of disallowing requests to withdraw medical-license applications except under certain limited circumstances; and (3) a memorandum contemporaneous to the amendment from the Director of the Office of Professional Regulation described the relevant part of the amendment as a provision to clarify existing law and practice. 169 Vt. at 406, 737 A.2d at 905. We concluded that "[t]hese circumstances strongly support[ed] an inference that the amendment was intended to clarify the meaning and scope of the Board's regulatory authority, not to change it." *Id.* at 406-07, 737 A.2d at 906.

¶ 18. In this case, no inference is required. The Legislature explicitly declared that the statute was intended only to clarify existing law and practice. As in *Perry*, the amendment was part of an omnibus bill with twenty-five separate sections involving appeals from a wide range of administrative agencies. See 1997, No. 161 (Adj. Sess.), §§ 1-25. The driving force behind the bill was the judiciary's Civil Rules Committee, whose chairman explained to the Senate Judiciary Committee that attorneys had complained over the years about the bewildering array of procedures and antiquated language involving appeals from various administrative agencies. The chairman further stated that the bill was aimed at getting rid of arcane language and procedures and making it clear to attorneys and clients where and when to take an appeal. Judicial Review of Administrative Actions: Hearing on H.30 Before Senate Judiciary Comm., 1997-1998 Bien. Sess. (Vt. January 16, 1998). Indeed, the purpose statement eventually enacted as part of Act 161 was proposed to the House Judiciary Committee by the chairman of the rules committee to make it absolutely clear that the amendment was intended only to clarify existing law and not to affect any substantive rights. Judicial Review of Administrative Actions: Hearing on H.30 Before Senate Judiciary Comm., 1997-1998 Bien. Sess. (Vt. May 2, 1997).

¶ 19. Moreover, the chairman of the House Judiciary Committee, where Act 161 originated, told the Senate Judiciary Committee that this was "strictly a housekeeping bill" that affected "no substantive rights" but rather was aimed only at "clean[ing] up language that does not conform to the standard way of describing how an appeal is taken." Judicial Review of Administrative Actions: Hearing on H.30 Before Senate Judiciary Comm., 1997-1998

Bien. Sess. (Vt. May 2, 1997 and March 31, 1998). The chairman advised that the Civil Rules Committee had solicited input from all of the affected departments, including the Department of Taxes. The general counsel for the Department of Taxes told the Senate Judiciary Committee that she was familiar with the changed language in the three sections concerning taxes on tobacco products, meals and rooms, and sales and use, and that she supported the changes, which were aimed at getting rid of arcane and antiquated language. Judicial Review of Administrative Actions: Hearing on H.30 Before Senate Judiciary Comm., 1997-1998 Bien. Sess. (Vt. May 2, 1997).

¶ 20. Nowhere in the legislative history of the bill over a span of two legislative sessions is there any discussion of altering the Department of Taxes' longstanding interpretation of § 9817 (or other comparable provisions dealing with taxes on tobacco products and rooms and meals) as pay-to-play statutes requiring the posting of security to proceed with an appeal to the superior court. Notably, in simplifying the language in the tax statutes, the 1998 amendment removed not only the "by filing" phrase that Vermont Golf concedes made it a pay-to-play statute, but also the phrase "to prosecute the appeal to effect" in the tobacco products and meals and rooms statutes, which even more explicitly demonstrated the pay-to-play aspect of those statutes. 1997, No. 161, §§ 22-23. It is inconceivable that the Legislature intended to make such a significant policy change affecting substantial rights, as well as the public fisc, without any discussion of such a change.

¶ 21. According to Vermont Golf, by standardizing all appeals from administrative agencies to courts, the Legislature meant for the civil and appellate rules, including Vermont Rule of Civil Procedure 74 and Vermont Rule of Appellate Procedure 3, to be followed. Under Rule 74(b), an appeal is taken by filing a notice of appeal with the court in a manner as provided by Appellate Rules 3 and 4. Vermont Golf points out that, under Rule 3, an appellant's failure to take any step other than the timely filing of a notice of appeal "does not affect the validity of the appeal, but is ground only for such actions as the Supreme Court deems appropriate, which may include dismissal of the appeal." V.R.A.P. 3(b)(1).

¶ 22. The short answer to this argument is that these are procedural rules, and the specific statutory requirement of posting

security in § 9817(a), which affects substantial rights, trumps a procedural rule requirement. Subsection 9817(a) establishes a specific, required statutory antecedent for an appeal from a tax assessment to go forward. The failure to post security may not deprive the court of its subject matter jurisdiction, see *In re Guardianship of L.B.*, 147 Vt. 82, 84, 510 A.2d 1319, 1321 (1986) (noting that under V.R.A.P. 3 timely filing of notice of appeal is only procedural step that is jurisdictional, and holding that dismissal for failure to timely file statement of questions for appellate review does not require dismissal on jurisdictional grounds), but it conditions a taxpayer's right to proceed with the appeal on meeting the specific statutory requirement of posting security in the manner set forth in § 9817(c).

¶ 23. Vermont Golf's main argument in support of its position that § 9817(a) does not require the posting of security as a condition to appeal to the superior court is that compelling security as a condition to appeal is inconsistent with § 9817(c), which contains language suggesting a scenario in which an appeal could go forward without the security having been paid. The first problem with this position is that the language of § 9817(c) that Vermont Golf relies upon was the same in relevant part before the 1998 amendment, and yet, as noted, Vermont Golf readily concedes that § 9817(a) was a pay-to-play statute requiring the posting of security to perfect an appeal before the Legislature supposedly eliminated that aspect of the law with Act 161. As demonstrated above, the 1998 amendment did not affect § 9817 in any substantive way. Therefore, any inconsistency between subsections (a) and (c) is overcome by the plain language of subsection (a) and the certainty that the 1998 amendment was not intended to change its meaning.

¶ 24. Moreover, the State provided a reasonable explanation for any inconsistency. As the State notes, subsections (a) and (c) have distinct purposes in the statute. Subsection (a) makes the posting of security mandatory to proceed with the appeal, while subsection (c) specifies the three possible forms of the security that may be posted, provides for reducing the security in specified circumstances, and allows the Department to assess a deficiency after the expiration of the appeal period if security has not been posted, notwithstanding a notice of appeal. The last point is redundant and perhaps inconsistent with respect to the requirement that security be posted for the taxpayer to go forward with an appeal.

But, as the State points out, any redundancy or inconsistency appears to result from the fact that some of the language of subsection (c) was adopted wholesale from a federal statute that is part of a different system in which, unlike in Vermont, an assessment is imposed after rather than before a notice of deficiency and legal proceedings.

¶ 25. For the same reason, Vermont Golf's reliance on federal law is misplaced. Vermont Golf relies upon case law construing a federal statute from which some of the language of subsection (c) is taken. But § 9817(a), not § 9817(c), is the subsection that establishes the statute's pay-to-play status. See *Rock v. Dep't of Taxes*, 170 Vt. 1, 8, 742 A.2d 1211, 1216-17 (1999) (cautioning against construing analogous federal provisions so as to extend their force and operation "beyond the clear import of the language and legislative intent"). For all of the above reasons, we uphold the superior court's dismissal of Vermont Golf's appeal from the Commissioner's decision based on Vermont Golf's failure to post security in the matter required by § 9817.

¶ 26. Vermont Golf argues in the alternative that the appeal should be allowed to go forward based on its post-audit taxes remitted under protest beginning in March 2008 after the Commissioner's ruling. The State counters that the procedure for providing security to stay an assessment is designed to protect the State's financial interest in taxes which have been assessed, not possible future tax liabilities or, as in this case, taxes paid by Vermont Golf after the audit.

¶ 27. As noted above, § 9817(c) provides that a taxpayer must pay the deficiency, deposit the amount of the deficiency with the Commissioner, or file a bond "in the amount of the portion of the deficiency (including interest and other amounts) in respect of which review is sought and all costs and charges." The statute refers to "the deficiency" as the deficiency being appealed by the taxpayer. Here, the Commissioner's decision affirmed the Department's assessment. Thus, to stay the assessment, Vermont Golf had to pay the amount for which it was found liable in the Commissioner's decision, deposit that amount with the Commissioner, or file a bond in the amount of which Vermont Golf sought review. Vermont Golf's post-audit payment of taxes is irrelevant to this analysis.

¶ 28. Finally, we need not address Vermont Golf's argument that the superior court's denial of its motion to stay should be

overturned for abuse of discretion, given our holding that § 9817 requires the posting of security to perfect an appeal to the superior court.

*Affirmed.*

¶ 29. **Robinson, J.,** concurring. I concur in the majority's conclusion based on the evolution of the language of 32 V.S.A. § 9817 since its inception, as well as its application in practice through that time, that the statute does, indeed, establish a so-called "pay-to-play" regime in connection with appeals to the superior court of decisions of the Commissioner relating to the sales and use tax. I write separately, however, because I believe the majority's conclusion that the plain language of the statute compels this result fails to consider the statute as a whole, and thus gives short shrift to the internal contradictions in the text of the statute.

¶ 30. In order to determine the intent of the Legislature, we "must examine and consider fairly, not just isolated sentences or phrases, but the whole and every part of the statute, . . . together with other statutes standing in pari materia with it, as parts of a unified statutory system." *State v. Jarvis*, 146 Vt. 636, 637-38, 509 A.2d 1005, 1006 (1986) (quotation omitted). "We have long presumed that 'all language in a statute or regulation is inserted for a purpose,' and that we 'must not allow a significant part of a statute to be rendered surplusage or irrelevant.' " *In re Miller*, 2009 VT 36, ¶ 14, 185 Vt. 550, 975 A.2d 1226 (citation omitted).

¶ 31. The majority is right that 32 V.S.A. § 9817(a) requires an aggrieved taxpayer who files an appeal to give security, although the subsection in its current form does not expressly state that payment of the security is a prerequisite to maintaining an appeal, or that the penalty for failure to post security is dismissal. Meanwhile, 32 V.S.A. § 9817(c) provides, in relevant part, that the Commissioner may assess a deficiency after the appeal period runs "notwithstanding that a notice of appeal regarding the deficiency has been filed by the taxpayer, unless the taxpayer, prior to the time the notice of appeal is filed, has [provided security]." That provision expressly contemplates and addresses the scenario in which a taxpayer has filed an appeal, but has *not* provided security. If provision of security is an essential prerequisite to maintaining an appeal, then this portion of 32 V.S.A. § 9817(c) is surplusage. On the other hand, in order to give effect

to this language in subsection (c), we would have to conclude that the statute is *not* "pay-to-play," thereby rendering the second sentence of subsection (a), which requires an appellant to give security, pointless — or at least quite oddly-placed.

¶ 32. In short, the statute as currently written is internally inconsistent. As a result of this ambiguity, we are called upon to conduct the more searching exploration of legislative intent, including the history and evolution of the statute, ably undertaken by the majority in this case. *MacDonough-Webster Lodge No. 26 v. Wells*, 2003 VT 70, ¶ 6, 175 Vt. 382, 834 A.2d 25 ("In circumstances where the purpose and significance of a statute are unclear, we look to the statute's legislative history to shed light on its meaning." (quotations omitted)). I write separately in the hope that express acknowledgment of the ambiguity in 32 V.S.A. § 9817 may lead to clarifying revisions.

¶ 33. I am authorized to state that Chief Justice Reiber joins this concurrence.